BESSIE MILLER v. CLARK W. HARPSTER, Appellant.

Division One, March 4, 1918.

1. **NEGLIGENCE:** Automobile Accident: Excessive Verdict: Fourteen Thousand Dollars. A verdict for fourteen thousand dollars for a young woman who was run over by an automobile, as she was standing at the edge of the macadamized part of a public road, the thigh bone being shattered for six inches into several pieces, one of which protruded through the flesh and skin, the leg being thereby shortened from three to three and a half inches ten months afterwards, compelling her to walk on crutches, was not excessive.

2. ———: ———: ———: Physical Pain and Mental Anguish. Distressing physical pain and mental anguish arising from a life-

time of deformity are for the consideration of the jury, who, in making up their verdict in a personal injury case, are authorized to resolve them into terms of pecuniary compensation.

3. ————: **Malicious Injury.** The plaintiff, having alleged that defendand "carelessly, negligently, recklessly and wantonly ran his automobile along said public road and against and upon plaintiff," did not destroy her action of negligence thus sufficiently alleged, by further stating that "all of said injuries were wilfully and maliciously given by defendant to plaintiff at said time;" and the petition containing but one cause of action, founded upon a single injury, and no exemplary damages being asked, if any reason existed why defendant was entitled to have the petition so reformed as to compel her to elect between a negligent injury and a malicious injury, he waived that right by voluntarily entering upon the trial without asking for such reformation or election.

4. ————: ————: **Instruction: Mutual Request.** Where the court, at plaintiff's instance, and in harmony with the petition, and without objection from defendant, instructed the jury that if they found from the evidence that the defendant "wilfully and maliciously" ran his automobile upon and over plaintiff they should find for her, and the defendant joined issue with her in an instruction of his own submitting the same issue of wilfulness and malice in a negative form, he cannot on appeal be heard to complain that the trial court erred in submitting the question of whether the defendant wilfully and maliciously ran his automobile upon and over plaintiff.

5. ————: ————: **Demurrer to Evidence.** Where the petition stated a good cause of action both on the theory of negligent injury and malicious injury, and the evidence was sufficient to sustain the negligent charge, a demurrer to the evidence at the close of the plaintiff's case and again offered at the close of the whole case, should be refused, where defendant made no effort to compel an election between the two causes of action and, by instruction asked at the close of the case, submitted the issue of malice.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer*, Judge.

AFFIRMED.

*A. Bowers* for appellant.

(1) The court erred in submitting this case to the jury upon the question whether the appellant committed the acts complained of willfully and maliciously. There is no evidence that the appellant willfully ran over the

respondent. There is no evidence of malice. This case is bottomed on express malice. And before a, recovery can be had there must be some proof of actual malice, or such recklessness or carelessness on the part of the appellant, as is equivalent to an actual intent to injure the respondent. Minter v. Bradstreet, 174 Mo. 444: 18 Am. & Eng. Ency. Law (2 Ed.), p. 1093. (2) The verdict is wholly unsupported by any evidence. There is no evidence of malice. At most there could only be negligence charged against appellant. Malice is distinguished from negligence in that it arises from an evil purpose, while negligence arises from a failure of purpose. People v. Camp, 21 N. Y. Supp. 741. Malice is the disposition to injure another without cause, from a spirit of revenge, merely, or from personal gratification. King v. Root, 4 Wend. (N. Y.) 113-155, 21 Am. Dec. 102. Malice in common acceptance means ill will towards some person. In its legal sense it is defined to be a wrongful act done intentionally, without legal justification or excuse. Buckley v. Knapp, 48 Mo. 152. (3) There is no evidence that the appellant willfully and maliciously injured respondent. Juries must base their findings on substantial legal evidence, direct or inferential, and cannot base them on mere conjecture. McCarthy v. Fagin, 42 Mo. App. 606. Presumptions as to facts or events arising from the absence of all evidence cannot be rationally indulged, when the reason on which they are founded has been made to cease by the introduction of evidence throwing light on the occurrences and explanatory of their causes. Sackberger v. Grand Lodge, 73 Mo. App. 38; Lee v. Knapp, 55 Mo. App. 390; Schepers v. Railroad, 126 Mo. 665. (4) In the absence of evidence that appellant willfully and maliciously injured the respondent it cannot be presumed that appellant willfully and maliciously injured respondent. All the presumptions are that appellant did not willfully and maliciously injure the respondent, until the question is put at issue as in this case, when there is no presumption either way. The issue is a question of fact, which is to be determined by the preponderance of evi-

dence. Liese v. Meyer, 143 Mo. 547. (5) The verdict and judgment is excessive.

*Mytton & Parkinson* for respondent.

This case was by agreement of the parties submitted to the jury upon the theory of wilfulness and maliciousness on the part of the appellant, and there was evidence to support respondent's theory of the case; that is, that the act was done wilfully and maliciously. 40 Cyc. 938; Holwerson v. Railroad, 157 Mo. 232; Railroad v. Wheeler, 115 Ind. 253, 17 N. E. 563; Pa. Co. v. St. Clair, 62 Ind. 301, 30 Am. Rep. 185; Palmer v. Railroad, 112 Ind. 250; State v. Robbins, 66 Me. 324; State v. Wienners, 66 Mo. 18; Trauerman v. Lippincott, 39 Mo. App. 478; Goetz v. Ambs, 27 Mo. 28; Ickenroth v. Transit Co., 102 Mo. 612; McNamara v. Transit Co., 182 Mo. 676; Davis v. Railroad, 192 Mo. App. 492; Sommers v. Keller, 153 Mo. App. 626; In re Freche, 109 Fed. 620; United States v. Reed, 86 Fed. 308; In re Munro, 95 Fed. 17; Tinker v. Caldwell, 193 U. S. 484.

BROWN, C.—This is a suit for personal injuries received by respondent from being struck by an automobile on the public highway. The amended petition upon which the cause was tried states the time and circumstances of the occurrence as follows:

"Comes now the plaintiff in the above entitled cause and for her second amended petition and cause of action states that on the evening of August 1, 1914, about eight o'clock p. m., she was walking along what is commonly known as the Rochester Road in Buchanan County, Missouri, said road being then and there a public highway and throughfare in said county and State; that while so walking along said road and while in the exercise of ordinary care on her part, the agents, servants and employees of the defendants in charge of and driving an automobile and motor car owned by the defendants, carelessly, negligently, recklessly and wantonly and without any regard whatever for the safety of the plaintiff or other pedestrians using said thoroughfare at said

time, willfully and maliciously drove said automobile on, along and over said Rochester Road heretofore mentioned, and against, upon and over the plaintiff, knocking her down, dragging her along said public road and thoroughfare, and inflicting the injuries hereinafter complained of; that said automobile was equipped with a horn or other safety sounding alarm device, and that said agent, servant and employee of the defendants carelessly, negligently, recklessly and wantonly ran said car as aforesaid along said public road and against and upon the plaintiff without sounding said horn or other alarm, or giving to the plaintiff any notice or warning whatsoever of the approach of said automobile, and at a dangerous and reckless rate of speed, to-wit, at the rate of thirty miles per hour; . . . that defendants carelessly and negligently, recklessly and wantonly, and without any regard to the safety of plaintiff or other pedestrians using said road, failed to stop said automobile when they saw plaintiff's danger, or, in the exercise of reasonable care and caution upon their part, could have seen plaintiff's danger; that defendants carelessly and negligently, recklessly and wantonly failed to give any signal or warning of the approach of said automobile; that all of said injuries above mentioned were willfully and maliciously given by defendants, their agents, servants and employees operating said automobile, to plaintiff at said time.''

The petition then set forth, truthfully and in detail, the nature and extent of the injuries inflicted upon the plaintiff, and laid her damages at the sum of twenty thousand dollars, for which she asked judgment.

Another defendant was originally joined with the appellant, as to whom the respondent suffered a nonsuit during the trial. This accounts for the use of the plural number used in referring to ''defendants'' in the petition.

No objection was made by demurrer or otherwise to the form or substance of the petition before the trial.

The verdict was for $14,000, upon which judgment was entered.

The answer, in addition to a general denial, contained a special plea of *contributory negligence,* to which a reply was filed.

There is no question as to the character or extent of the injury. The bone of respondent's thigh was shattered from a point just above the knee for about six inches, so that there were several pieces, one of which was driven through the flesh and skin above the fracture, and from which it protruded when she was picked up. At the time of the trial, which occurred nearly ten months afterward, she was walking on crutches and the leg was shortened from three to three and a half inches. She received various other bruises more or less severe, particularly in her side and shoulder. While her general health was still affected at the time of the trial, her full recovery in that respect was probable. The deformity of her leg was, of course, permanent.

The accident occurred upon a public highway extending northeasterly from St. Joseph, and at a point about a quarter of a mile outside the city limits, where the road was graded to a width of about thirty-five feet, in the middle of which was a macadamized space of sixteen feet.

At about 5:30 or 6 o'clock a party of five had gathered at a saloon at Sixth and Messanie streets, in St. Joseph, for a fishing expedition. At that place they put two cases of beer in the Ford car in which they were going, and on their way through the city completed their piscatorial outfit with the addition of a quart bottle of whisky. At a point on the Rochester Road about two miles east of where the plaintiff was injured, their car "turned turtle," injuring some of them so that a doctor was called to bandage them, and the appellant was also called to come to the place of the accident and take them to the city in his car. The appellant, accompanied by a woman, went out, and taking them all in except one who had accompanied the doctor, started for the city. It was during this homeward trip that the accident occurred. His condition was described by witnesses in

different terms, varying from "under the influence of
liquor" to "drunk." He did not testify. The respond-
ent, who lived with her parents on the Rochester Road
near the place of the accident, had, accompanied by her
little brother and Ethel Kelsey, a girl cousin who re-
sided in Oklahoma and was visiting the Miller family,
taken the cows to the pasture a short distance away,
and was returning when they met George Rowbotham,
a boy friend, and stopped to talk with him. They were
standing at the north side of the macadam, where it
joined the dirt road, engaged in conversation, when ap-
pellant's automobile came from the east over a perfect-
ly straight stretch of road from two to three hundred
yards in length, and ran upon the respondent. The car
is described by some of the witnesses as covering the
whole road, that is to say, wabbling from side to side
of the road, and running very fast—from 35 to 40 miles
per hour. A witness who met a car about that time at
a distance which she described as two blocks east of
the place of the accident, related her own movements
with her horse and buggy to escape it, and said, in sub-
stance, that it seemed to be running faster than a rail-
road train. Others, including the respondent's father,
who examined the ground at the time, stated that a trail,
looking as if a heavy sack had been drawn along the
road sixty feet by actual measurements, ended in a
pool of blood where she was picked up, and that the
appellant's car was stopped at a point fifty feet still
farther west. The theory of the appellant, which the
testimony of some of his passengers tended to prove,
was that the plaintiff, holding the child by the hand, was
standing out of the way of the car, which was running
very slowly, and suddenly jumped in front of it and
was hit and knocked down. One of them said, in sub-
stance, that it looked as if she was intending to commit
suicide.

At the close of all the testimony the appellant asked
the court to instruct the jury that under the law and
evidence their verdict should be in favor of the defend-
ant. This was refused, and the court thereupon, at

the request of respondent, instructed the jury as follows:

"The court instructs the jury that if you find and believe from the evidence that on the 1st day of August, 1914, the plaintiff, while in the exercise of ordinary care, was standing stationary upon the Rochester Road at the point mentioned in evidence, and that while she was so standing upon said road in a stationary position, the defendant, Clark W. Harpster, wilfully and maliciously ran an automobile, going at a high rate of speed, and without giving any warning of any kind or character, against, upon and over the plaintiff, thereby injuring her, then your verdict will be for the plaintiff."

This instruction was given without objection or exception on the part of the appellant. The court then gave for the appellant the following instruction:

"You are instructed that unless you believe and find from the preponderance or greater weight of the evidence that the defendant wilfully and maliciously ran against and over plaintiff, thereby injuring her, then your verdict must be for the defendant."

He then again offered his instruction that under the law and the evidence the verdict should be for defendant, which was refused by the court and the appellant duly excepted.

I. The defendant makes the point that the verdict is excessive, and should not, on that account, have been permitted to stand. The immediate result of the injury naturally included physical pain of the most distressing character, and the mental anguish included the mental distress arising from a lifetime of physical deformity. These things were for the consideration of the jury, to be resolved into terms of pecuniary compensation. [Shortridge v. Scarritt Estate Co., 145 Mo. App. l. c. 305; Schmitz v. Railway Co., 119 Mo. 256; Rosenkranz v. Railway Co., 108 Mo. 9.] We can see nothing in the amount of this verdict inconsistent with an honest and intelligent effort to perform this duty with sole reference to the evidence before them.

*Excessive Verdict.*

II.  The only real question in the case is stated by the appellant as follows:  "This court erred in submitting this case to the jury upon the question whether the appellant committed the acts complained of wilfully and maliciously.  There is no evidence that the appellant wilfully ran over the respondent. There is no evidence of malice."  It arises out of the fact that the court, at plaintiff's instance, and without objection from defendant, had instructed the jury, in substance, that if they should find from the evidence that the defendant *wilfully and maliciously* ran an automobile going at a high rate of speed and without any warning of any kind or character, against, upon and over the plaintiff, thereby injuring her, their verdict should be for the plaintiff, and the defendant had joined issue with her in an instruction of his own submitting the same issue of wilfulness and malice in a negative form.  No other instructions were asked or given stating the principles by which the jury should be guided in arriving at their verdict.

*(margin note: Malicious Injury.)*

The petition based the cause of action on the charge that the defendant "carelessly, negligently, recklessly and wantonly ran said car as aforesaid along said public road and against and upon the plaintiff without sounding said horn or other alarm, or giving to the plaintiff any notice or warning whatsoever of the approach of said automobile, and at a dangerous and reckless rate of speed, to-wit, at the rate of thirty miles per hour."

As to the sufficiency of these words to state a cause of action for negligent injury no question is made, nor is the proposition open to question.  But the petition further states "that all of said injuries above mentioned were wilfully and maliciously given by defendants  .  . to plaintiff at said time."  The appellant seems to consider this last statement as troubled oil poured upon the placid water of the charge of negligence, which, by the alchemy of legal technology, is at once transformed into a criminal charge so stable and elementary in its character that it cannot again be separated.

This striking and highly specialized theory is founded in the conception that the words "wilfully and maliciously" are equivalent to the word "intentionally," that while there is but one cause of action stated—the alleged wrongful injury to the plaintiff—yet having alleged it as a wilful and malicious injury, the wrong of negligence is swallowed, if we are permitted so to speak, by those voracious words. The same principle carried to its logical conclusion would lead to the result that every action for negligent wrong could be defeated by a showing that there lurked inside the brain of the wrongdoer the secret intention to perpetuate the act. To avoid this the common law permitted the injured party to waive the intent, and rely upon the neglect. [Sherman & Redfield on Negligence, sec. 1a.] That this rule might apply to all cases, including those in which a crime against the State is involved, our own Legislature enacted (R. S. 1909, sec. 5447) that "in no case shall the right of action of any party injured by the commission of any felony or misdemeanor be deemed or adjudged to be merged in such felony or misdemeanor."

This petition contains but one cause of action. It is founded upon a single injury. Precisely the same evidence must support it in either aspect in which we have considered it. No exemplary damage being asked, the same measure of damages applies alike under each theory. Had there existed any reason why the appellant might have profited by compelling the reformation of the petition or the election of the respondent to adopt one of the two rival theories before entering upon the trial, that reason was swept away in the developments of the trial itself, upon which the appellant voluntarily entered without asking such reformation or election, and he cannot now treat the course which he invited as error. [Christal v. Craig, 80 Mo. 367, and cases cited: State ex rel. v. Tittmann, 103 Mo. l. c. 569; Jordan v. Transit Co., 202 Mo. l. c. 428; Finnell v. Street Railway, 159 Mo. App. l. c. 525-6.]

III.   Keeping the foregoing principles in view, but little remains to be said.  As we have already shown, the petition stated a good cause of action upon whichever horn of the dilemma presented by the appellant **Demurrer.** the evidence might be hung.  This being the case the general instruction in the nature of a demurrer to the evidence offered by the appellant at the conclusion of the evidence was properly overruled, and the case then stood as if it had never been asked. The ruling of the court on that question having been correct, the exception then taken had no reference to anything that might subsequently occur in the cause. It was then that the court gave, at the instance of the respondent, the instruction upon which this appeal is predicated.  It was stated in oral argument that it was given with the express concurrence of the appellant, but this is a matter of no consequence, for his silence amounted, in law, to such concurrence, and admitted, for the purposes of the case, that the pleadings and evidence, taken together, justified the submission of the issue that it formulated to the jury.  In asking it the respondent assumed a burden which it was not necessary for her to bear under the pleadings and facts in evidence. But of that the appellant, having, in the argument, enjoyed the fruits of his own consent, cannot now complain.

It only remains to consider the effect of his subsequent renewal of the request that under the pleadings and evidence the verdict must be for the defendant, and his exception to its refusal.  We do not see how this action of the court can authorize him to complain of the result of the trial of the issue of his choice.  The pleadings and evidence remained the same as before the respondent's instruction had been given.  If they authorized the submission of the issues in any form, as we have already held they did, it was properly refused.

IV.   That the appellant is not in a situation to complain of the submission of the issues of wilfulness and malice to the jury when it was plainly for his

interest to do so, renders it unnecessary to examine the evidence with reference to its sufficiency in that respect. The question of its sufficiency to authorize a finding that the injury was negligently inflicted was, however, fairly raised by the demurrer to the evidence. The fact that it seems to have been practically abandoned in the presentation of the cause justifies us in disposing of it with the statement that a fair synopsis of it is shown in the statement which preceded this opinion, and that, in our opinion, it fully justified the verdict.

The judgment of the Buchanan Circuit Court is affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur; *Bond, P. J.,* in the result.