GRACE LACH, ADMINISTRATRIX, ETC., RESPONDENT, v. WILLIAM G. BUCKNER, APPELLANT.—86 S. W. (2d) 954.

Kansas City Court of Appeals.   October 7, 1935.

*Clay C. Rogers, Mosman Rogers* and *Bell & Buzard* for respondent.

*Morrison, Nugent, Wylder & Berger* and *Charles C. Byers, Jr.* for appellant.

TRIMBLE, J.—The action involved herein is a suit for damages because of the fact that John E. Lach was struck by defendant's truck as Lach was walking across the intersection of 61st Street and Brookside Boulevard in Kansas City, Missouri. Lach was walking east on 61st Street, crossing Brookside, and was in said intersection, when defendant's Ford truck, driven north by the latter's servant on Brookside, struck and knocked Lach down. The accident occurred at 6:15 P. M., on November 19, 1930, and on March 24, 1931, Lach filed suit, to which defendant, Buckner, on May 12, 1931, filed answer. Thereafter, on November 4, 1932, defendant filed suggestions of the death of Lach, and on the 18th day of February, 1933, Grace Lach, as Administratrix of the estate of John E. Lach, deceased, filed motion to revive, under section 3280, Revised Statutes of Missouri, 1929 (5 Mo. St. Ann., p. 3398), which motion was sustained on the 18th of February, 1933, and Grace Lach, as such administratrix, was substituted as party plaintiff, and summons was ordered to issue for defendant, William G. Buckner, to appear on or before March 4, 1933, and show cause, if any, *why the action should not be revived.*

Whereupon, defendant, on said 19th day of February, 1933, entered his appearance and plaintiff filed her amended petition. Thereafter, on February 20, 1933, defendant filed written waiver of summons, and process and entry of appearance to the March term, 1933, to said amended petition.

On February 12, 1934, it being a part of the January term, 1934, of said court, defendant filed his amended answer to said amended petition.

Thereupon a trial was had, and on February 14, 1934, the jury returned a verdict in plaintiff's favor for $3,800. Defendant has duly appealed.

Said amended petition charged negligence in that defendant:

1. Negligently and carelessly failed to keep a reasonably careful and vigilant lookout for pedestrians on said street intersection.

2. Failed to sound or give a signal of warning of the approach of said truck.

3. Moved and operated said truck at an excessive, dangerous and unreasonable rate of speed under the circumstances then and there existing.

4. Drove and operated said truck in the nighttime at more than a half-hour after sundown without any or sufficient lights on said truck.

5. Failed to keep truck under such reasonable control so as to be able to stop the same, when, by the exercise of the highest degree of care, it should have appeared that there was danger of striking and injuring said John E. Lach.

6. Failed to exercise the highest degree of care in the operation of said truck and failed to stop said truck and prevent striking said John E. Lach.

7. Failed to swerve said truck aside, or slacken the speed thereof, or stop the same, or give timely signal of warning of the approach thereof, by reason of which the striking and injury of said John E. Lach could have been prevented.

8. That "each and every one of said negligent acts operated jointly and concurrently to and did cause the injury to the said John E. Lach," by reason of which he was damaged in the sum of $25,000 and for which judgment was prayed.

The amended answer to plaintiff's amended petition first contained a general denial, next a plea that John E. Lach was guilty of contributory negligence in that he "failed to exercise ordinary care for his own safety in crossing said intersection;" that he failed to exercise ordinary care in observing approaching traffic, and negligently failed to avoid placing himself in a position of danger at said time and place; in that said Lach "negligently followed a diagonal course in crossing said intersection instead of following the sidewalk lines;"

in that said Lach, "although he saw or in the exercise of ordinary care for his own safety could have seen the truck . . . in time by the exercise of ordinary care for his own safety to have avoided colliding with the same, nevertheless placed himself in a position of danger, and negligently failed to remove himself therefrom."

In defendant's opening statement to the jury, his counsel stated that the accident happened November 19, 1930, and two years later, sometime in November, 1932, Mr. Lach died from cerebral hemorrhage, and the contributing cause, as given by the doctors, was arteriosclerosis, which means hardening of the arteries. "Now, gentlement of the jury, there is no claim in this petition, *and it is not claimed*, and there will be no evidence in the case that this accident caused the arteriosclerosis; there will be no evidence that it caused the stroke from which he suffered between the time of the accident and the time of his death, nor will it be in evidence that it produced the cerebral hemorrhage from which Mr. Lach died in 1932."

It is contended by defendant that the court erred in refusing to direct a verdict for defendant as requested by him at the close of the entire case. Defendant's claim is that, notwithstanding plaintiff's cause of action stands revived under the provisions of section 3280, Revised Statutes of Missouri, 1929, 5 Mo. St. Ann., p. 3298, which applies only to injuries, *"other* than those resulting in death," yet, nevertheless, the evidence introduced by plaintiff is to the effect that John E. Lach's death was precipitated and hastened by his alleged injuries. This contention cannot be answered, in this case, *merely* by the argument that the case was tried, by *both sides*, on the theory that decedent's death was *not* the result of the collision or the acts complained, of. It may well be, that if the case was so tried by both sides, defendant would not be allowed to change his theory on appeal. [Roth, Admr., v. City of St. Joseph, 180 Mo. App. 381.] We are not saying that a defendant may not, by the manner in which the case is tried, preclude himself from raising the point on appeal that the evidence shows that the death resulted from the injuries sued for in the revived case, and, therefore, the case is not revivable under Section 3280. It is possible for him to so preclude himself, under certain circumstances. [Jordan v. St. Joseph, etc., Power Co., 73 S. W. (2d) 205, 213.] The revived case does not show any express statement or concession on the above question, in the pleadings. Plaintiff, in her petition, alleged that decedent's death was not so caused, and defendant, by his amended answer containing a general denial, technically disputed that allegation. It cannot be said that defendant's counsel, in his opening statement to the jury, conceded that the death was not caused by the collision. At most, said opening statement was merely telling the jury what the plaintiff had pleaded, and what counsel thought plain-

tiff's evidence would be. Defendant's given instruction J does not bind him to the theory that the collision did not result in plaintiff's husband's death, for it only told the jury that plaintiff "makes no claim" that said husband's death was caused by the accident; and the fact that the instruction ended by saying that "you are instructed that the plaintiff cannot in this action recover damages for the death of said John E. Lach" did not, in effect, concede that his death was *not* so caused. It merely stated what was true as a matter of law. Before that instruction was asked and given, defendant had already asked, and was refused, his peremptory instruction to find for defendant. If now, contrary to what plaintiff pleaded and claimed in his opening statement, the evidence in plaintiff's behalf *did*, in fact, *show* that the husband's death resulted from the accident, then defendant can still urge that the case was not revivable and that error was committed in refusing his demurrer.

It would seem, therefore, that whether the refusal of the demurrer to the evidence was erroneous because it was *conclusively* shown that the accident *did* result in the husband's death, is a point still open to defendant to urge, and the effectiveness of such point depends on what the evidence does conclusively show in this regard.

The evidence in plaintiff's behalf is to the effect that—

John E. Lach was seventy-two years of age when, on November 19, 1930, he was struck by the truck, the alleged negligent act on which the suit is based. His arteries were hard before the accident, they were in the condition the doctors call arteriosclerosis, an accompaniment, in greater or less degree, of such advanced age. The accident did not cause the sclerosis, the doctors so testify. While decedent suffered a severe concussion of the brain at the time of the accident, and on October 4, 1932, had a cerebral hemorrhage of which the physicians said "Arteriosclerosis was the contributing cause." The plaintiff's evidence from the medical witnesses is (and the death certificate so stated), that he died from a cerebral hemorrhage with arteriosclerosis the contributing cause.

A physician, Dr. Revelle, whose deposition was taken by defendant, but was introduced as a part of the evidence on plaintiff's side, testified that he was called to attend Mr. Lach on the morning of November 20, 1930, after he was struck by the truck; and continued to treat him until December 4 and then dismissed him from treatment until he was called again on December 16, 1930, when Lach had a convulsion, which the doctor diagnosed "as a subsequent symptom of arteriosclerosis, cerebral arteriosclerosis or hardening of the arteries, particularly the arteries of the brain." The doctor testified that he thereafter treated Mr. Lach for cerebral hemorrhage and that ultimately he died, as result of that condition, on October 4, 1932. He was asked an hypothetical question, "assuming that prior to the time

Mr. Lach was injured he appeared to be in a normal condition; for a man of his age, getting about, and he didn't appear to have any disabled condition; that apparently the organs of his body functioned normally;" and assuming that he was "struck by an automobile and knocked a distance of ten or fifteen feet, and received injuries to his head; that he was dazed and stunned for some hours after that, or more; and that he was confined to his bed for a period of four or five weeks—three or four weeks—and that, after the injury, he was unable to control his urine as he had before, and that he suffered convulsions and, finally, a stroke of paralysis—have you an opinion as to whether or not the injury he received would exaggerate and precipitate or bring on this condition of convulsions and paralysis?, to which, after the matter of objection had been settled, he answered:

"A. I would answer that it would probably precipitate the convulsions; but I don't think I could say it would precipitate the paralysis.

"Q. Now, in your judgment and opinion, and from your knowledge of the case, the convulsions precipitated the paralysis? A. Yes, sir."

By the 4th of December, 1930, fifteen days after the accident, Lach had responded to the Doctor's treatment so that the latter then discharged him as a patient.

There is no evidence to the effect that Mr. Lach died as a result of the injuries caused by the defendant's truck striking him, and for which he brought suit; and which, after his death, was revived by the present plaintiff, his administratrix. Defendant's contention made in this court that his demurrer to the evidence should have been sustained rests upon a conclusion defendant attempts to draw from evidence as to the care and attention required to be given Mr. Lach arising from a stroke of paralysis he had about two months after the accident and from the fact that one of the physicians, Dr. Gibson, a witness for plaintiff, after testifying as hereinbefore shown that Mr. Lach died of a cerebral hemorrhage with arteriosclerosis as a contributing cause, testified on cross-examination, that "in my opinion, this accident, as I described, would hasten and accelerate this process of arteriosclerosis." He also expressed the opinion that "the accident predisposes to these convulsions (the one he had at the time of the 'stroke'). . . . That they might not have occurred without the accident." Later, the witness said he thought the accident may have accelerated or hastened the process of sclerotic, or hardened, condition of the arteries he found.

We do not think this evidence is sufficient to conclusively show that the accident caused Mr. Lach's death so as to render void the reviver of the suit under said Section 3280.

The case of Strode v. St. Louis Transit Co., 197 Mo. 616, is not in point when cited in support of defendant's above stated contention.

1072

Nor are the cases of Fetter v. Fidelity & Casualty Co., 174 Mo. 256; Herke v. St. Louis & San Francisco R. Co., 141 Mo. App. 613; Chapman v. Bimel-Ashcroft Mfg. Co., 263 S. W. 993. The issue in those cases, which plaintiffs therein had to establish, was that the accident *caused* the death; in the case at bar, the plaintiff's recovery depends upon a showing to the contrary, while defendant is asserting that the former is precisely what the plaintiff's evidence did show. We think not. It seems that defendant did not put much faith in such contention at the trial, since he did not submit such issue to the jury by asking an instruction telling the jury that if the injuries received at the accident *caused* the death, then plaintiff could not recover. Indeed, in his amended answers to plaintiff's amended petition, he did not expressly raise such issue to defeat the cause of action, and plaintiff perhaps may well have thought that such issue was not in the case, especially as defendant asked and obtained instruction M which, in substance, told the jury that the mere fact that Lach was struck and injured by the truck, did not entitle plaintiff to recover, but that before she could do that, he must prove that the injury, if any, was directly caused by the negligence charged and submitted. The result is, as heretofore stated, that unless plaintiff's evidence *conclusively* shows that the injury arising from the accident pleaded as a basis of his cause of action, caused the death of Mr. Lach, there is no ground for the sustaining of defendant's demurrer to the evidence based on that ground.

The defendant's next contention is that plaintiff's decedent, Lach, was, as a matter of law, guilty of contributory negligence. The "assignment of error" does not indicate or refer to anything showing in what such alleged contributory negligence consists, but as the "printed argument" in the appellant's brief does perhaps reveal this, we may possibly rule on the point.

On the facts as to what occurred at the time Mr. Lach was struck by the truck in the intersection, plaintiff's evidence tends to show—

Edward J. Fleming, who at one time and for several years was one of the Municipal judges of Kansas City, testified that his residence (shown in Plaintiff's Exhibit 1, a photograph looking north on Brookside Boulevard from the said intersection), of a dark color, was on the west side of Brookside, being the second house north from the corner of 61st Street and Brookside. On the night of the injury, November 19, 1930, about 6:30 or 6:45 P. M., he, in his house, heard the screeching of brakes and he went outside and saw the defendant's truck in the street about fifty or sixty feet north of 61st Street, and it afterward came up to within fifteen feet north of the corner. Somebody was putting a man into a car whom he recognized as Mr. Lach. He appeared to be stunned or dazed, but witness observed no blood on him. Witness did not think Lach was able to

walk alone, and told the men gathered there where the injured man lived (on the next street and just back of witness' house). Witness assisted Lach to his home and went there with him. Witness had known Mr. Lach for some five or six years. Before the accident Lach seemed to be in normal health, had no difficulty in getting about the neighborhood. He always thereafter used a cane. He was taken home from the accident in an automobile. Witness stated that after Lach was taken home, he was sent to the hospital but after being there for perhaps two hours he was brought back home. A few months after he was struck, witness saw Mr. Lach walking in the back yard. He did not walk as well as he did before. He walked with a cane and used it.

Miss Gaxiola, daughter of the Mexican consul at Kansas City, was standing at the window in the white house on the west side of Brookside, being the first house north of 61st Street on that side of Brookside Boulevard. She testified she saw Mr. Lach struck. Mr. Lach started across Brookside, going east. She saw the automobile or truck "a little ways before" it struck him. It was going "pretty fast; I should think about, oh, about 40—35 or 40 miles an hour." She says Mr. Lach was about in the middle of Brookside when the truck struck him so he (the driver) must have been driving about the middle. When Lach was struck, the truck "knocked him quite a ways," . . . about fifteen or twenty feet, I think, I could not say exactly." She says she observed no head lights, that she could remember, on the truck. She saw Mr. Lach when he left the west side of Brookside Boulevard and started across. She did not remember whether he had an umbrella or a cane, and she watched him "as far as he got." He was walking very slow. No automobiles were passing at that time going south that she remembered. Mr. Lach got to about the middle of the street. It was raining and a very dark night. She says she saw the car coming, as she watched him. "I was thinking he had better go faster or the car would hit him, as the car was coming fast." She says she saw Mr. Lach look up and down the street as he left the curb and started across.

She didn't think she saw him look up after he got into the street, but she saw him look both ways before he started across. The driver of the truck made no attempt to stop before the collision. After striking Mr. Lach, the driver stopped as soon as he could. Witness said she was seventeen years of age.

John Marquette, a witness for defendant, testified he was making delivery of parcels of laundry for his employer at the time of the accident. He was making a delivery at Miss Gaxiola's residence. His automobile was parked a short distance north of the walk on 61st Street, not right on the corner. Witness testified that the first he noticed was the approach of the defendant's truck coming from the

south on Brookside headed in a northwesterly direction and traveling at a rate of between twenty-five and thirty miles an hour. It came to a stop about a car's length behind witness' car. It was still headed north and next to the west curb. Witness heard no sound of a horn or warning of the approach of said truck. It was about 6:30 or 6:45 in the evening, and dark. There was a light rain, and the truck was about the center of Brookside when witness first saw it. After the truck had passed the line of witness' vision, he saw Mr. Lach lying in the street perhaps five or six feet east of the curb-line of Brookside *and ten or fifteen feet north of the north cross-walk or line of 61st Street.* Witness had just come out of the Gaxiola home and did not see Mr. Lach the moment he was struck.

John E. Lach's deposition was taken on the 30th of April, 1931, after he had brought his suit for damages for his injuries; and in the revived suit plaintiff introduced his deposition. He testified in the deposition *he was going east on 61st Street crossing Brookside.* Before starting across Brookside he waited for two cars to pass, one going one way and one going the other. When he saw the street was clear, he started across, but when he was about three-fourths across Brookside, the truck struck him and knocked him down, he "fell and laid unconscious there." As he crossed the street he was looking up and down the street, but did not see the truck coming. He never saw it. No lights were on it. "There was no horn sounded, I didn't hear any noise of any kind whatever." He testified he walked on the north side of 61st Street at the intersection. Now, the defendant's claim of contributory negligence on the part of Mr. Lach, is based upon a statement made by him, in the course of his cross-examination, that—

"I started in crosswise, to go across the street; not straight across but crosswise.

"Q. By 'crosswise' do you mean you started walking in a diagonal way? A. Yes, sir, to get across to the other corner.

"Q. To which other corner? A. To the southeast corner.

"Q. To the southeast corner? A. Yes, sir, from the northeast corner.

"Q. From the northeast corner to the southeast corner? A. Yes, sir.

"Q. That is the way you *intended* walking?" (Italics mine.)

It is manifest from the entire testimony, Mr. Lach was confused in this. There is no doubt but that he was struck by the truck as he was on the north side of 61st Street going east across Brookside Boulevard on the intersection and was struck when he was about three-fourths across the street; but he stated just before he made the above quoted statement as to where he *intended* to cross, "when I got to Brookside, I crossed Brookside, and *made an entrance into*

*Main Street*, and when I got about ·half, or three-quarters, across, along comes this car. I did not see a light, and it hit me.'' Clearly he was not testifying that he was intending to walk, or was walking, diagonally across Main Street when he was struck. It cannot be held, as a matter of law, that he was guilty of contributory negligence. Defendant cannot quote evidence from witnesses, offered in evidence in his behalf, to establish decedent's contributory negligence negligence in other regards, since it is the prerogative of the jury to believe the evidence of plaintiff's witnesses in preference to the driver of defendant's truck and his companion with him. The case of Alexander v. St. Louis & San Francisco Ry. Co., 327 Mo. 1012, same case cited by defendant in 38 S. W. (2d) 1023, 1026, is not in point under the circumstances of the case at bar. It cannot be said decedent was conclusively guilty of contributory negligence. [Brown v. Conser Laundry Co., 246 S. W. 166, 169, 170; Carralure v. Ford, 187 S. W. 285, 289, 290; Ternetz v. St. Louis Lime & Cement Co., 252 S. W. 65, 70; State ex rel. v. Allen, 250 S. W. 580; Genter v. O'Donohue, 179 S. W. 732, 733.]

It is further contended that reversible error was committed in introducing in evidence a section of a city ordinance which said the rate of speed for driving shall not exceed fifteen miles an hour when crossing an intersection when any person is on said intersection crossing or crosswalk with whom there may be danger of collision. The claim is that the violation of this ordinance was not pleaded in the petition as an act of negligence and therefore it was reversible error to introduce it. No citation of authority is made in support of said point, hence it will be treated as abandoned. [Jones v. Peterson, 72 S. W. (2d) 76; O'Howell v. Miller, 11 S. W. (2d) 1068.] However, excessive rate of speed was one of the acts of negligence pleaded, and with proof of a violation of a speed ordinance is some evidence of excessive rate of speed at which the truck was driven. [McPherson v. Premier Service Co., 38 S. W. (2d) 277, 278.]

One of the witnesses was attempted to be impeached by introducing a written statement made by the witness *subsequent* to a former statement made March 5, 1931. The latter, being made *prior* to the alleged impeaching statement, was rehabilitation. Hence it was proper. [State ex rel. v. Haid, 64 S. W. (2d) 687; Steele v. Kansas City Southern Ry., 302 Mo. 207, 219; Jones v. St. Louis-San Francisco Ry. Co., 253 S. W. 737, 741.] The objection that other portions of the rehabilitating statement were wrongfully admitted cannot be of force, since no objection to any specific portion of it was made. [Albert v. Dolan, 27 S. W. (2d) 438, 441; Stephen v. Metzer, 95 Mo. App. 609, 623.]

We cannot see any reversible error in the admission of the testimony of Mr. Lach as to things prescribed by the doctor for Mr. Lach after

December 4th. Most of the things of this character were excluded by the court, but the witness did testify that the doctor prescribed "Quieting powders, to make him sleep, and always (told them) to keep him propped up in bed, to keep him from taking pneumonia," and those directions were carried out. The wife was not recounting hearsay, but stating a fact of which she was cognizant, that he was given quieting powders to assist his rest, and the wife knew the result thereof. No authority is cited in support of this contention and hence no reversible error is shown. [Murphy v. Fidelity Nat'l Bank & T. Co., 49 S. W. (2d) 668; O'Howell v. Miller, 222 Mo. 1168.]

It is urged that Dr. Gibson was allowed to base his conclusions as to Mr. Lach's condition on what Mr. Lach told him in answer to the question the doctor asked him. But Dr. Gibson is the best evidence as to what his opinion was based on, and his testimony is that "It had nothing to do with it." It may be that Dr. Gibson's conclusions as to Mr. Lach's mental condition may have received some influence from the way Mr. Lach answered queries put to him, but this was not used as a basis of past events or as to his past physical condition. We find nothing in the point made for which the judgment should be reversed.

It is contended that reversible error was committed in giving plaintiff's instruction P 1. The claim being that the instruction standing alone, as it did, "was tantamount to a statement to the jury that the law of Missouri placed a general duty upon the driver, which the latter had in all probability violated." The instruction stated in substance that the law required the driver of an automobile to exercise the highest degree of care in the operation of same and to drive same at such a rate of speed as not to endanger the life or limb of a person. It did not tend to broaden the issues, or to confuse the jury, or to invite error, as did the instruction condemned in Lewis v. Kansas City Public Service Co., 17 S. W. (2d) 359. The case was reversed upon other grounds but it is not stated that it constituted reversible error. The instruction properly declared the law as contained in Section 1775, Revised Statutes of Missouri, 1929 (7 Mo. St. Ann., p. 5197). As in the case of Riner v. Riek, 57 S. W. (2d) 724, 726, the instruction being accompanied by others given on both sides, there is no reason for saying it was reversibly erroneous.

The objection to plaintiff's instruction No. 2 is without merit. It did not go outside the evidence. The fact that the truck struck Lach under the circumstances shown in plaintiff's evidence, is some evidence that it did not swerve. Plaintiff's instruction did not assert that the truck did not swerve, but left it to the jury to say whether it did or not. There was testimony tending to show that Lach walked slowly across Brookside Boulevard (60 feet wide) along the north line of 61st Street, at a lighted intersection and where he was

seen on the street by at least one witness 100 feet away. Defendant's own witness, the driver, says he approached the intersection going at twenty miles per hour and that he could have stopped in fifteen feet. It was shown there was no obstruction or vehicles on the street to prevent a swerving to either side of Lach; and if that had been done he would not have been struck. The instruction was not erroneous. [Allen v. Purvis, 30 S. W. (2d) 196, 201.] We are not required to *conclusively* accept defendant's witnesses that the driver did swerve; or if he did, it was not in time. An ineffective or untimely swerve is no swerve at all so far as safety of the pedestrian is concerned, where the driver has had opportunity to see the pedestrian and made no use of it. Such swerve is like insufficient light, no light at all, as held in Glaser v. Rothschild, 120 S. W. (2d) 1, 10. Plaintiff's instruction No. 2 was not a peremptory instruction in any respect, but submits such facts therein contained, hypothetically, for the jury's determination. A similar instruction was approved by the Supreme Court in Reith v. Tober, 8 S. W. (2d) 607, 610. The instruction did not submit negligence in general terms but negligence in failing to swerve and pass Mr. Lach. [Mueller v. Holecamp, 200 S. W. 118.] It is wholly unlike the instruction in Stermoth v. Brainard, 20 S. W. (2d) 712, 715, hence the latter decision is not in point; neither is the case of Talbot v. Chicago, Rock Island & P. Ry. Co., 294 S. W. 499, 504. If said Lach, as a result of the negligent failure, if any, to swerve the truck to one side, "was struck and injured by said automobile and sustained damages as a result thereof, and if you further find that said John E. Lach, was at the time in the exercise of ordinary care for his own safety, then you are instructed that under such circumstances, if you so find them," verdict should be in favor of plaintiff. Since the evidence is that Lach was struck by the automobile or truck, knocked ten or fifteen feet and rendered unconscious, the instruction is not open to the charge that it was erroneous in that it did not charge that the alleged negligence directly or proximately caused the injuries complained of. The evidence and the circumstances surrounding the striking of Lach are so wholly unlike those in the case of St. Louis & H. R. Co. v. Walsh Fire Clay Products Co., 16 S. W. (2d) 616, 618, that the cited decision is in no way applicable.

The criticism of plaintiff's instruction 3 which was based upon the negligent failure, if so, to sound any signal or warning of the approach of said truck is likewise clearly without merit. It is no doubt true that instructions must conform to the pleadings in presenting the issue of alleged negligence. And that rule is universal. But instruction 3 nowhere violates it nor was there any reason for more clearly defining or explaining the language used in the instruction; and if there had been, the defendant asked no instruction

making the meaning more definite and explicit. [Corbin v. Kansas City, St. J. Ry. Co., 41 S. W. (2d) 832, 838; Buck v. Thatcher, 7 S. W. (2d) 398, 401.] Manifestly, it was not necessary, nor was it so deemed, since defendant asked and was given his instruction M which told the jury that the mere fact that John E. Lach was injured by being struck by the truck, does not entitle plaintiff to recover damages, but before she can recover in this case, she must establish to the reasonable satisfaction of the jury, by the preponderance of the credible testimony, that the injuries, if any, of John E. Lach "were directly caused by negligence on the part of the defendant in the particular respects submitted to you in the other instructions."

Complaints are made against each of plaintiff's instructions 4, 5 and 6, but they are likewise without merit. There was no dispute nor issue over whether John E. Lach was in a position of peril. That was conceded. The question was whose fault was it that he got struck. Defendant, in pleading contributory negligence, specified how Lach negligently placed himself in danger and he cannot now claim that error was committed by plaintiff's instruction in not submitting specifically therein that Lach was in a position of danger. [Allen v. Purvis, 30 S. W. (2d) 198, 200; Fledderman v. Mfg. Co., 254 S. W. 717, 719; Packer v. Chicago, Milwaukee & St. Paul Ry. Co., 265 S. W. 119.] We have carefully examined the record and authorities in regard to other objections to plaintiff's instruction No. 6 but find it unobjectionable. [Fowlkes v. Fleming, 17 S. W. (2d) 511, 516, 517.] No error appears in the refusal of the court to give the withdrawal instructions asked by defendant. The jury knew nothing of the matters sought to be withdrawn, since the petition was not in evidence. [Weber v. Evans, 15 S. W. (2d) 370.] The giving of a withdrawal instruction is discretionary. And no showing has been made that the trial court's discretion has been abused.

It is finally urged that the verdict is excessive. The verdict was for $3,800. The evidence shows that Mr. Lach was struck, knocked some feet down the street and rendered unconscious. His suffering was serious and existed for some time. His death was not caused thereby, but after his injuries he required care and nursing, and was not the fine-spirited, active, hale, man he had been before that for a man of his age. We are afforded no ground to say that $3,800 was excessive for the injuries he sustained.

The judgment is affirmed. All concur.