Robert Cosentino, Appellant, v. John B. Heffelfinger, Respondent, No. 41452—229 S. W. (2d) 546.

Division One, April 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, May 8, 1950.

536

*Keith Martin, Harry C. Clark, Louis W. Krings* and *Walter A. Raymond* for appellant.

*Lyman Field, Clay C. Rogers* and *Reed O. Gentry* for respondent.

VAN OSDOL, C.—Action for $10,450. for personal injuries, and property damage, sustained by plaintiff in an automobile collision at the intersection of Meyer Boulevard and Rockhill Road, public streets in Kansas City. Defendant stated a counterclaim for personal injuries and damage to property. The case was tried without the services of a jury. The trial court found the issues in favor of defendant on plaintiff's claim (and for plaintiff on defendant's counterclaim). Plaintiff has appealed from the ensuing judgment.

Plaintiff had alleged, among other allegations of specific primary negligence, the primary negligence of defendant in driving into the intersection at a high and dangerous rate of speed when defendant could not see traffic approaching the intersection from his right; and plaintiff had alleged negligence of defendant under the humanitarian rule in failing to stop, slacken speed, sound a warning, or swerve. Defendant by answer alleged the contributory negligence of plaintiff in failing to "keep a reasonably careful and vigilant lookout" (and by counterclaim, defendant had alleged plaintiff was guilty of specific primary negligence and negligence under the humanitarian rule).

The trial court found the issues in favor of defendant on plaintiff's claim on the theory the evidence showed plaintiff was contributorily negligent; and, upon the issues of humanitarian negligence of defendant, the trial court was of the view the evidence was insufficient to justify the finding defendant could have acted in time to have avoided plaintiff's injury after plaintiff came into imminent peril. The trial court found plaintiff "has admitted he saw defendant's car when it was 90 feet to the north of him, and that thereafter he was fully apprised of the approach of said vehicle toward and into the intersection and estimated the speed at which it was traveling."

Meyer Boulevard, an east-west street, has a roadway 50 feet wide from curb to curb; and Rockhill Road, a north-south street, has a roadway 40 feet in width. The "corners" at the intersection are "broad sweeping curves." The diagonal distance across the "broad sweeping" curved intersection is 136 feet. A "Slow" sign is situate on the south side of Meyer Boulevard, 75 feet west of the curb line, if extended, of Rockhill Road; and a "Slow" sign is situate on the west side of Rockhill Road, 90 feet north of the north curb line, if extended, of Meyer Boulevard. One moving southwardly on Rockhill Road toward the intersection comes up a decided grade "reaching its peak" about 25 or 30 feet north of the north crosswalk of Meyer Boulevard. Meyer Boulevard is "downgrade" to the eastward. The intersection is unusually free of obstructions. There is no building near the northwest corner of the intersection.

The collision occurred about 4:00 p.m., December 5, 1946. Plaintiff, a painter and interior decorator, was driving his 1936 Model two-door Chevrolet sedan eastwardly on Meyer Boulevard. Four of plaintiff's fellow workmen were riding in the car; they were going home after their work for the day. The sun was shining; the atmosphere was clear; and the streets were dry. The brakes on plaintiff's car were in good condition.

Approaching within two blocks of the intersection of Meyer Boulevard and Rockhill Road, plaintiff stopped at stop signs in front of a church and a school, his last stop being in a block west of Rockhill

Road. Plaintiff testified that, as he approached the "Slow" sign on the south side of Meyer Boulevard, he slowed to 2 or 3 miles an hour. He looked northwardly, and saw no car approaching. He continued eastwardly until he was about 20 feet west of the west curb of Rockhill Road (the "west curb" considered as if projected squarely up to the corner of the intersection), and at that time he saw defendant's car "up about" the "Slow" sign on Rockhill Road some 85 or 90 feet north of the north curb line of Meyer Boulevard. Plaintiff, increasing speed, continued on into the intersection. One of the passengers riding in plaintiff's car called, "Look out, Robert." Plaintiff then looked northwardly and again saw defendant's automobile and "tried to avoid it." This was the "third time" he had seen the approach of defendant's car. Plaintiff testified that, at the time, his automobile was moving at a speed of 8 or 10 miles an hour. He turned his car "to the south slightly" just as the collision occurred.

On cross-examination plaintiff testified as follows,

"Q. And you could have stopped your car within ten feet? A. If I had to stop quick I could have stopped. Q. In ten feet, is that what you mean? A. Why, sure. Q. But you didn't do that. You kept on increasing your speed? A. I proceeded at eight or ten miles an hour, yes. Q. You kept on increasing your speed? A. Increasing my speed, yes. Q. To try to beat him across that intersection, to try to get out of his way? A. Why, sure, why wouldn't I? . . . Q. . . . How far away was his car from you when you saw it bearing down on you? A. When I first saw him? Q. Yes. A. He was about 85 or 90 feet. . . . Q. You observed when you saw him 90 feet away as he was bearing down on you he did not slow down, is that right? A. Why, no, he didn't slow down, no. Q. And you speeded up to try to get out of his way, is that right? A. Why, sure."

A police officer, who had arrived at the intersection a few minutes after the collision, testified a diagram made by him at the time indicated plaintiff's car had proceeded 10 feet and defendant's car 31½ feet into the intersection when the cars collided. The officer's report disclosed a notation that plaintiff was traveling "too fast for conditions." The notation was based on the fact that defendant's automobile came to rest after the collision, "a considerable distance east of the point of impact." The witness thought the force of the impact had carried the defendant's automobile to the eastward; it was "actually out of the intersection."

A passenger in plaintiff's automobile testified plaintiff slowed down to 5 or 6 miles per hour at the "Slow" sign, then shifted into "second to increase speed." The street was clear of traffic. When the plaintiff's automobile was about halfway in the intersection, "a car was just piled on us then." Plaintiff's car was moving 12 or 13 miles

540

per hour. Defendant's car was moving 35 miles per hour, "maybe a little faster." Plaintiff was knocked unconscious by the impact, and his automobile rolled about 400 feet on down "towards Troost" before one of the passengers could "hit the brakes." This witness said the collision occurred in the southeast quadrant of the intersection.

Another passenger in plaintiff's automobile, who was injured in the collision, testified for defendant. The witness stated plaintiff, approaching the intersection, did not slacken speed and "continued on at 25 miles an hour"; defendant was moving "not to exceed 25 mile"; and "if anything," defendant entered the intersection first. This witness had settled with an "insurance company" and, it is to be inferred, he was to be paid by defendant "for appearing in court."

Defendant testified that, moving at 25 miles per hour, he had approached the intersection from the north. He was driving his 1940 Model Master DeLuxe Chevrolet sedan. He said that, when he approached the "Slow" sign 90 feet north of the intersection, he decreased speed and looked eastwardly, and then to the westward. When he last looked westwardly he was about 20 feet south of the "Slow" sign. He did not sound a warning signal. He drove on into the intersection at about 20 miles per hour without again attempting to look for traffic coming from the west.

The "right front" of defendant's automobile struck the left front "quarter panel" and door of plaintiff's car.

Defendant further testified that in approaching the intersection he was about four feet west of the center line of Rockhill Road. The sun was low in the southwest at the time, and, when he was approximately 20 feet south of the "Slow" sign, the sun's bright rays struck the windshield and blinded him so that he "apparently" could not see traffic coming from the west. He was "centering" his attention on school children moving eastwardly across Rockhill Road. He became aware of some "object or the shadow on that object" on his right. He "braked severely" and swung his car to the eastward. Defendant said his inability to see plaintiff's automobile was "a contributing factor to the accident."

There were skid marks made by defendant's car on the pavement. The marks indicated defendant's car had made an eastward turn. The length of the marks was not shown. The testimony of witnesses for plaintiff and defendant was in conflict on the question—who entered the intersection first. Some of the witnesses stated (and the trial court found) the point of collision was a little, "approximately three feet," west of the center line of Rockhill road and approximately six feet south of the center line of Meyer Boulevard.

It is the contention (1) of plaintiff-appellant that defendant's own testimony (that he had driven into the intersection at twenty

miles per hour without sounding a warning and while so blinded by the sun that he could not see traffic coming from the west) was a binding judicial admission of willful, wanton and reckless conduct, and consequently the alleged contributory negligence of plaintiff was not a defense. In the alternative, plaintiff-appellant further contends (2) the trial court erred in holding plaintiff was guilty of contributory negligence; he says that, under the clear preponderance of the evidence, plaintiff was not contributorily negligent; but nevertheless, if plaintiff were considered contributorily negligent, plaintiff contends (3) he, in the circumstances, was entitled to recover under the humanitarian rule.

This court will review the case, an action at law tried without a jury, upon both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge of the credibility of the witnesses. Subsection (d), Section 114, Civil Code of Missouri, Laws of Missouri, 1943, p. 388, Mo. R. S. A. § 847.114 (d); Hart v. T. L. Wright Lumber Co., 355 Mo. 397, 196 S. W. 2d 272. The trial court's findings on issues of fact may not be disturbed by this court unless clearly erroneous. Johnson v. Frank, 354 Mo. 767, 191 S. W. 2d 618.

(1) While allegations of negligence and of willful, wanton and reckless conduct are not necessarily repugnant (Miller ▮ v. Harpster, 273 Mo. 605, 201 S. W. 854; Agee v. Herring, 221 Mo. App. 1022, 298 S. W. 250), there is a clear distinction between unintentional injury due to negligence, the failure to observe due care, and injury, actually or impliedly intentional, due to willful, wanton or reckless conduct. Nichols v. Bresnahan, 357 Mo. 1126, 212 S. W. 2d 570; II Restatement, Torts, Comments c. and d., § 282, and § 500. Plaintiff stated a claim based on alleged primary and humanitarian negligence of defendant, and nowhere in plaintiff's petition is contained an allegation of the willful, wanton and reckless conduct of defendant. Defendant, as stated, had interposed his defense of contributory negligence to plaintiff's allegations of primary negligence, and plaintiff by reply reasserted his injuries were occasioned by the negligence of defendant as in the petition stated. The record does not disclose the issue of willful, wanton and reckless conduct of defendant was expressly or impliedly interjected into the case by consent of the parties. See Section 82, Civil Code of Missouri, Laws of Missouri, 1943, p. 378, Mo. R. S. A. § 847.82. Indeed, in the trial court, plaintiff consistently adhered to his theories of defendant's liability based on primary and humanitarian "negligence." At the conclusion of the trial proper, after plaintiff had heard defendant testify, plaintiff requested the finding of fact that his injury was the "direct result of defendant's negligence"; he did not urge the submission of his case on any theory of willful, wanton or reckless

conduct of defendant. And, in his motion for a new trial, plaintiff assigned errors of the trial court in refusing to allow plaintiff's recovery on the theories of primary and humanitarian negligence. Plaintiff did not choose to state, and undertake the burden of showing defendant's conduct was willful, wanton or reckless, but stated and tried and submitted his case upon the issues of "negligence." He lost his case as pleaded, tried and submitted on his chosen theories. He should not herein, in justice, have his case reconsidered upon the theory defendant was guilty of willful, wanton and reckless conduct. Compare Nichols v. Bresnahan, supra; Miller v. Harpster, supra; Section 140 (a), Civil Code of Missouri, Laws of Missouri, 1943, p. 395, Mo. R. S. A. § 847.140 (a). It is true that in exceptional cases this court under its Rule 3.27 can and does (in its discretion) consider decisive issues upon appeal although not raised in the trial court, or preserved for review. See Kindred v. Anderson, 357 Mo. 564, 209 S. W. 2d 912, action to determine title to real property, wherein this court under Rule 3.27, having construed a will, protected the rights of a litigant by carrying out the wishes of a testatrix, and affirmed the judgment on a different theory than that urged below; and In re Duren, 355 Mo. 1222, 200 S. W. 2d 343, proceeding for adoption, wherein this court, in affirming a judgment, treated with the "legal capsheaf" of the issues actually litigated in the trial court, although the legal point had not been raised below.

■ (2) The evidence supports the trial court's finding plaintiff was "fully apprised" of the approach of defendant's automobile from the time it was ninety feet north of the intersection. Being aware of defendant's approach, plaintiff moved into the intersection and in front of defendant's automobile, although plaintiff, according to his own testimony, had at all times the ability to stop within ten feet. There was evidence justifying the inference defendant had entered the intersection first. Plaintiff's own testimony sustains the view that, seeing defendant was not decreasing speed, plaintiff nevertheless moved on into the intersection with increasing speed into the pathway of defendant's car endeavoring to "beat" defendant across the intersection. The trial court was justified in finding plaintiff was not acting in the exercise of the highest degree of care and so was contributorily negligent. Claridge v. Anzolone, 359 Mo. 65, 220 S. W. 2d 33; Yeaman v. Storms, 358 Mo. 774, 217 S. W. 2d 495.

■ (3) It is argued that defendant's answer alleging contributory negligence of plaintiff in failing to keep a "lookout" is binding upon defendant precluding him from asserting the nonobliviousness of plaintiff on the issues of humanitarian negligence. The cases of Knorp v. Thompson, 352 Mo. 44, 175 S. W. 2d 889; Taylor v. ■ Kelder, 229 Mo. App. 1117, 88 S. W. 2d 436; and Lach v. Buckner, 229 Mo. App. 1066, 86 S. W. 2d 954, are cited. Had the trier of the facts found against defendant on the issues

of humanitarian negligence on the theory plaintiff was oblivious, then defendant might have been in an unfavorable position (in view of his answer alleging plaintiff's failure to look out) to herein contend the record did.not support the humanitarian submission on the theory of the obliviousness of plaintiff. See the Knorp, Taylor and Lach cases, supra. In the instant case the trial court found for defendant. The trial court found plaintiff was "fully apprised" of the approach of defendant's vehicle, and the finding plaintiff was aware of defendant's approach was supported by plaintiff's own testimony quoted supra.

Plaintiff, being aware of the approach of defendant's automobile, did not come into a position of imminent peril until he was so close to the pathway of defendant's car that he could not apply his brakes and stop, or slacken speed, or swerve, and avoid the collision. Claridge v. Anzolone, supra; Yeaman v. Storms, supra; Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S. W. 2d 51. Defendant's automobile struck plaintiff's car near the left front quarter panel and door. It seems this is not a case where a slight slackening of speed of defendant's automobile or a slight swerving thereof could have averted the collision. And a warning would have served no purpose after plaintiff became aware of defendant's approach. Pentecost v. St. Louis Merchants' Terminal R. Co., 334 Mo. 572, 66 S. W. 2d 533.

According to plaintiff's testimony, plaintiff was moving eight or ten miles per hour. There was also evidence plaintiff was moving at greater speed. Defendant testified he (defendant) moved into the intersection at the speed of twenty miles per hour, although there was testimony defendant was moving as fast as thirty-five miles per hour. In view of the varying estimates of speed and distance it is difficult to determine the exact point where plaintiff came into imminent peril. Much depended upon the trial judge's observation of the witnesses and his judging of their character, ability, and the consequent weight of their testimony. The evidence justifies the.findings of the trial court that the nonoblivious plaintiff was moving at a speed of "fifteen (15) miles per hour," and that defendant was moving at "twenty (20) miles per hour." In such circumstances, it is doubtful that defendant could have acted, after plaintiff was in imminent peril, in time to have averted the collision. This is true, even though defendant saw or could have seen plaintiff approach and pass into the intersection. Yeaman v. Storms, supra. And there was substantial evidence tending to show that, being blinded by the sun, defendant could see plaintiff but momentarily before the collision. If defendant *could not* see plaintiff's position until it was too late for defendant to act in averting the collision, the humanitarian rule did not seize upon the situation, inasmuch as defendant did not have "notice" of plaintiff's position of peril in

544

time to thereafter avert "the impending injury." Compare Payne v. Reed, 332 Mo. 343, 59 S. W. 2d 43; Knebel v. Poese, Mo. App., 153 S. W. 2d 844. See also constitutive factual elements of the humanitarian rule as stated in Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482.

We are not convinced the trial court's judgment was erroneous. The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.