WILLIAM E. YEAMAN, Respondent, v. FRANCES STORMS, Appellant.— No. 40427.—217 S. W. (2d) 495.

Court en Banc, December 13, 1949.

Rehearing Denied, February 14, 1949.

*Lyman Field, Mosman, Rogers, Bell & Field* for appellant.

*A. H. Osborne, Duke W. Ponick, E. E. Thompson, J. H. Greene, Jr., Popham, Thompson, Popham, Mandell & Trusty* for respondents.

[496] CONKLING, J.—Respondent-plaintiff had judgment in the lower court for $10,000 as damages which he claimed resulted from an

intersection collision of motor vehicles. After unavailing motion for new trial appellant-defendant perfected her appeal. We will refer to the parties as plaintiff and defendant.

Plaintiff's petition alleged both primary and humanitarian negligence but the cause was submitted to the jury upon instruction 1, predicating recovery upon the humanitarian doctrine alone. Appellant's main contention is that her motion for a directed verdict should have been sustained because the record facts and proper inferences therefrom did not make a case which the trial court had a right to submit to the jury. This requires a full statement of the facts.

On August 16, 1945, at about 11:30 A. M., defendant was driving a 1942 Cadillac automobile north on Brookside Boulevard, a "through" north and south thoroughfare in Kansas City, Missouri. The day was clear and fair. The streets were dry. The collision occurred at 54th Street and Brookside Boulevard. Plaintiff was driving his 1935 ton and a half Ford pickup truck eastwardly on 54th Street across its intersection with Brookside. His truck was struck about the center of the right side by defendant's car. The collision occurred in the northeast quarter of the intersection. Each vehicle moved only a few feet after the impact.

Brookside is forty-five feet wide, and from 55th north to 54th Street is on a one per cent down grade. Fifty-fourth Street, only 26 feet wide, runs generally east and west, and intersects Brookside at a right angle. A short distance west of Brookside, Westover Road approaches from the southwest and enters the south side of 54th Street. From 55th Street north to 54th Street was 600 feet.

Yeaman, having approached from the southwest on Westover Road, reached the intersection of Westover Road and 54th Street and brought his truck to a full stop at the "stop-sign" on Westover Road before he entered 54th Street. That stop sign was 58 feet southwest of the west intersection [497] line of Brookside. Plaintiff moved that 58 feet northeast up to the intersection line at 3 to 4 miles per hour. Entering the intersection at that speed he thereafter moved 45 feet east, or a little north of east, up to the point of impact at "seven to eight, maybe ten miles an hour". From the stop sign plaintiff travelled 103 feet to the point of collision.

Defendant driving north from 55th Street toward 54th Street was travelling on the east side of Brookside. When plaintiff's truck was stopped at the stop sign on Westover Road he looked south on Brookside and saw defendant's automobile moving north toward 54th Street. Defendant was then 400 feet south of the intersection and, according to the estimates of the various witnesses, was moving at "about 36 or 35 or 36" or "between 30 and 40" or "between 35 and 40 miles per hour". Plaintiff testified he "knew she was moving toward the same intersection" (of 54th and Brookside) and "she didn't have to

sound her horn after that. I didn't think it was necessary to sound it.''

As plaintiff came to the west intersection line of Brookside he looked south and again saw defendant's car, this time 200 feet away and still moving toward the intersection at 30 to 35 miles per hour. Plaintiff testified he thereafter could have stopped his truck at any time within ten feet but never did apply his brakes. Instead he pressed down on the foot accelerator, speeded up his truck and "tried to get across before she (defendant) got up to the point of impact". Just where in the intersection plaintiff crossed over to the north of the centerline of 54th Street does not appear in the record. But he was swerving left at the instant of impact. On his Exhibit 1, a plat of the intersection drawn to scale, plaintiff marked the point of collision as about 2 feet north of the centerline of 54th Street. Plaintiff said he "tried to go a little faster when I saw it (defendant's automobile) approaching pretty fast", and continued to watch defendant's car until the collision occurred. Plaintiff testified, "I tried to get out of the road, I thought I had plenty of time to get out of the way. . . . I thought she would slow down which she didn't".

Defendant testified she first saw plaintiff's truck near the stop sign when she was about 200 feet south of the intersection. She further testified: "Q. What did you do thereafter, continue on? A. I did, I am afraid I assumed he was going to stop—coming into the boulevard". Defendant further testified that she next noticed the truck when "it was almost into the intersection and I was almost into the intersection". She testified she applied her brakes "full force and swerved my car to the right in an attempt to swing into 54th Street along with him in the same direction . . . I made, shall I say, a frantic effort to avoid a collision. . . . Q. Why didn't you swerve your car to the left, Mrs. Storms. A. In a split second decision it was necessary, my judgment was it might swerve it into the face of an oncoming traffic coming from the north, in my judgment it was the safest thing to swing to the right." The Cadillac made skid marks on the street forty feet in length. Defendant's car moved only eight feet after the impact. Plaintiff's expert testified that at 35 miles an hour defendant's car could have been stopped in 75 or 80 feet, and in 100 to 105 feet at 35 miles an hour. When the collision occurred plaintiff's truck, according to estimates of various witnesses, was within from 12 to 3 feet of the east intersection line of Brookside. Plaintiff testified the front of his truck was 10 or 12 feet east of the center of Brookside when he was struck.

Consideration of the estimates of speeds and distances given by plaintiff's witnesses, the Walsh family, Beulah Malone, and the police officers who arrived after the collision, have presented difficulties in attempting to reconcile such estimates. Much of that testimony is inconsistent, self-contradictory, confused and contrary to

undisputed physical facts. No testimony helpful to plaintiff's case was given by any witness offered by defendant. We have above set out the sum and detail of the testimony in the light most favorable to plaintiff.

It is apparent from the record before us that plaintiff was not oblivious of the approach of defendant's automobile. He was **[498]** conscious of its approach when his truck was at a full stop 103 feet before he reached the point of impact. When he started up to move toward the path of defendant's approaching car he knew defendant's car was rapidly moving toward the place where he intended to cross the Boulevard. When he started into the intersection and was 45 feet from the point of collision plaintiff again saw defendant's car only 200 feet south approaching at unreduced speed. He continued on without stopping and without applying his brakes. When about the center of Brookside he again saw and again knew defendant's car was approaching at unreduced speed. He then continued to watch defendant's approaching automobile until the collision occurred. He not only did not stop, he increased his speed and "tried to get across before she (defendant) got up to the point of impact". At any time after he was in the intersection he could have stopped in ten feet. Plaintiff was not oblivious.

Under the humanitarian doctrine no duty to act was imposed on defendant until a situation of imminent peril came into existence. Claridge v. Anzolone et al., (Mo. Sup.) No. 40633, 220 S. W. (2d) 32, filed concurrently herewith, Blaser v. Coleman, et al., No. 40248, 358 Mo. 157, 213 S. W. (2d) 420, Kick v. Franklin, 345 Mo. 752, 137 S. W. (2d) 512, Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S. W. (2d) 696. Plaintiff's situation of imminent peril, or position of peril, under the facts of record here (plaintiff not being oblivious and having the ability to stop in ten feet) was very narrow and did not come into existence until plaintiff was so close to the path of defendant's car that he could not stop short of that path. Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S. W. (2d) 51, Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S. W. (2d) 296, Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47.

Plaintiff's position of peril existed for only as much more than the last ten feet his truck moved at 10 miles per hour up to the path of defendant's car as it would require for him to put on his brakes. By simple calculation that peril existed for only substantially two-thirds of a second or a second before the collision. In any event prior to a second before the collision there was no duty upon defendant under the humanitarian theory of negligence. Smithers v. Barker, supra, State ex rel. St. Louis-San Francisco R. Co. v. Reynolds, 289 Mo. 479, 233 S. W. 219.

Moving at from 30 to 35 miles an hour defendant's car moved substantially 50 feet per second. But only during the last two-thirds or

a little more of that substantially 50 feet did the humanitarian doctrine place any duty on defendant. It would move that far with the wheels locked and the record shows that the brakes on defendant's car were locked for the last forty feet before the collision. And prior thereto some reaction time was required for defendant to comprehend the situation. We judicially notice that reaction time is required. Gosney v. May Lumber & Coal Co., supra, Shelton v. Thompson, 353 Mo. 964, 185 S. W. (2d) 777, 778, Stark v. Berger, 344 Mo. 170, 125 S. W. (2d) 870, 872. Plaintiff's witness, Sergeant Kelleher, of the Police Department, testified that under the circumstances there existing normal reaction time was three-fourths of one second. It substantially appears, therefore, that when plaintiff's peril actually in law arose defendant in fact had commenced to make an unavailing effort to stop.

Should we attempt to adjudicate negligence even under the humanitarian theory when, of necessity, it must be based upon variable surmises as to what may or may not have been accomplished in two-thirds of one second, a little more or a little less?

In Underwood v. Ry. Co., 182 Mo. App. 252, 168 S. W. 803, the court said: "But why speculate as to 1 or 2 seconds in time and 5 or 10 feet in distance of the horse from the track. Liability cannot be predicated on so narrow a margin." To multiply authorities would unduly burden this opinion. But under the circumstances here only by dissecting seconds into fractions, only by conjecture and speculation, only by guessing at the distance between these two vehicles at a certain instant could the jury have found that defendant could have avoided this collision after plaintiff, fully aware of her approach, drove [499] into her path. The reasoning and conclusions of the above cited cases are adhered to by the courts.

The instant facts not only fail to establish a violation of the humanitarian rule, but, in addition, there is presented here a situation to which the courts have consistently declined to apply such rule. To bring any case within that rule more is required than a showing of a mere possibility that a collision might have been avoided. The rule does not go to the length to which it is here sought to extend it. No good reason is apparent for giving it such extended scope. Not even the humanitarian doctrine as applied in Missouri has affected the rule that the burden is on the plaintiff to show that injury is the direct result of defendant's negligence. And we must decline to leave the inference of the existence of that negligence to speculation. Cases cited above.

Plaintiff contends his position of peril was widened because he was "apparently dominated by a fixed intent to pursue his course into defendant's very path" and that he was therefore in peril at all times after such intent became evident. We agree with the principle of the cases cited by plaintiff which announce the above rule of

law. But we cannot agree to its application to these facts. Plaintiff was moving slowly. Defendant's car was under his almost constant observation after he reached the intersection. In crossing Brookside he was looking not straight ahead or down or to the north, but to the south watching defendant's car. His truck was under control. He could have stopped it in ten feet. We find nothing in this record which bespeaks an apparent fixed intention not to stop and which would authorize a conclusion that plaintiff's position of peril extended beyond the last ten feet.

We have examined and considered the applicability of the cases cited and relied on by plaintiff, Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S. W. (2d) 1000, Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S. W. (2d) 200, Bowman v. Standard Oil Company of Indiana, 350 Mo. 958, 169 S. W. (2d) 384, Teague v. Plaza Express Co., 354 Mo. 582, 190 S. W. (2d) 254, and others. The facts of this case are unlike the facts of those cases. Our conclusions in the instant case on different facts are not out of harmony with cases relied on by plaintiff.

Having determined adversely the question of the applicability of the humanitarian doctrine to the record facts, we are confronted with the question of the remand of the case.

Conscious of the near approach of defendant's car, having it constantly in his vision, moving at a low rate of speed and possessing the ability to stop in ten feet, plaintiff failed to make any effort so to do. Quite the contrary. He testified: "Q. At that time (when at the west intersection line) you looked to the south and saw the defendant Mrs. Storms 200 feet away? A. That is right. Q. Going 30 to 35 miles an hour? A. That is right. Q. At any time thereafter you could have stopped your car within ten feet, couldn't you? A. Yes, I guess I could. Q. Certainly, you know you could, don't you? A. Yes, sir. Q. But you did not apply your brakes or even attempt to apply your brakes, did you? A. I tried to get out of the road, I thought I had plenty of time to get out of the way. Q. You tried to beat her? A. I thought she would slow down which she didn't. Q. You tried to beat her across the intersection, didn't you? A. I didn't try to beat her across. Q. You tried to get across before she got up to that point of impact? A. Yes. Q. You were pressing on your accelerator to accomplish that end? A. Yes, I was in the middle of the street, had the right of way in plain sight."

Plaintiff is bound by that testimony. It precludes recovery by him upon any primary negligence theory. Claridge v. Anzolone, supra, Roberts v. Consolidated Paving and Material Co., 335 Mo. 6, 70 S. W. (2d) 543, Gosney v. May Lumber & Coal Co., supra, Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S. W. (2d) 477. Having at all times the ability to quickly stop, he drove his [500] motor vehicle across the intersection when he saw the near approach of traffic and

merely for the purpose of trying to first cross the intersection, or with indifference to a collision. Plaintiff's conduct, under these circumstances, cannot be held to be the exercise of the highest degree of care and free from contributory negligence. As for primary negligence, plaintiff had no right to ask an operator of any approaching vehicle to take more care of him than he was willing to take of himself. It is not necessary to rule the other assignments of error. The judgment is reversed. It is so ordered. All concur, except *Tipton, J.*, not sitting.

PER CURIAM:—In his earnest and ingenious motion for rehearing respondent re-argues and further urges upon us that he made a jury issue upon the humanitarian theory of negligence, and that, if he did not the cause should be remanded for retrial upon primary negligence theories. His motion has been carefully considered but it does not raise any questions not heretofore raised and ruled.

Our opinion filed rules that this case presents a situation as to which we decline to apply the humanitarian rule of negligence. Plaintiff's own testimony affirmatively shows that defendant's automobile was in his sight and under his constant observation as it was approaching and as he was crossing the interesection. However earnestly we are urged to do so we must decline to close our eyes and ears to respondent's own testimony and rule that he was oblivious. He testified he could have stopped in ten feet. We cannot disregard respondent's own testimony. No explanation of it was attempted to be made by him. We must accept it. Under prior adjudications respondent's position of peril existed for only two-thirds of a second or at most only a second before the impact. It is our considered opinion that under the circumstances of record here we should and we do decline to so extend the humanitarian rule as to hold that a jury case has been made. The inference of the existence of negligence cannot be left to speculation.

As to remand. Respondent's own testimony that merely to try to beat the defendant's car across the intersection, he drove on across in spite of the fact that he saw appellant's car rapidly approaching and that he had the ability to quickly stop, precludes his recovery. We cannot approve and have consistently condemned racing across intersections in an effort to beat another motor vehicle across. And we cannot now approve it.

The respondent's motion for rehearing is overruled. It is so ordered.