257 S.W.2d 228 (1953)
THOMAS
v.
AINES FARM DAIRY et al.
No. 21766.
Kansas City Court of Appeals. Missouri.
April 13, 1953.
*230 Reed O. Gentry, Jack B. Robertson and Rogers, Field & Gentry, Kansas City, for appellants.
Lee H. Hamlin, Herbert Jacob and Walter A. Raymond, Kansas City, for respondent.
BOUR, Commissioner.
This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff as the result of a collision between an automobile driven by plaintiff and a truck owned by defendant Aines Farm Dairy, and operated by defendant Robert L. Whitaker, an employee of defendant company. Verdict and judgment were for plaintiff in the sum of $3500, and defendants have appealed.
The petition contained seven assignments of negligence, six of which charged primary negligence, and the seventh charged humanitarian negligence. The answer was a denial of each separate allegation of negligence, coupled with a plea of contributory negligence. The case was submitted solely upon humanitarian negligence in failing to slacken speed and in failing to swerve after plaintiff came into a position of discoverable imminent peril. Defendants contend that "plaintiff's submission (Instruction No. 3) under the humanitarian doctrine was not authorized by the evidence." This requires a full statement of the facts.
The scene of the accident was the intersection of Troost Avenue and Sixty-third Street in Kansas City, Missouri. Troost runs north and south and Sixty-third runs east and west, intersecting at right angles. Both streets are 50 feet wide at the intersection. Sixty-third is level in that vicinity, but Troost is downgrade from Sixty-second south to Sixty-third. There are two streetcar tracks on Troost, the distance between the rails of each track being about 5 feet; and the inside rails being about 5 feet apart and equidistant from the center of the street. The west track is used for southbound cars and the east track for northbound cars. At the time of the accident there was a stop sign for westbound traffic on the north side of Sixty-third, a short distance east of the east line of Troost; and a slow sign for southbound traffic was located on the west side of Troost, north of Sixty-third.
The collision occurred about 6:30 a. m., on August 10, 1949. The streets were wet but it was not raining at the time and visibility was good. Plaintiff was driving a Ford Tudor sedan west on Sixty-third Street, and the Aines truck was traveling south on Troost. The sedan was about 16 feet long. Defendant Whitaker described the truck as a Divco Panel Truck, approximately 18 to 20 feet long and 7 to 8 feet wide. It was loaded with milk, milk byproducts, and ice. The two vehicles collided in the northwest quadrant of the intersection, the front end of the truck striking the right (north) side of plaintiff's car. Photographs of the Ford sedan (plaintiff's exhibits 1 and 4), taken at the scene of the collision, show that the front part of the right rear fender was crushed and both doors on the right side badly damaged. The sedan came to rest with the left rear wheel against the curbing at the southwest corner of the intersection. Plaintiff sustained personal injuries as a result of the collision.
Plaintiff testified that on the morning of August 10, 1949, he drove west on the north side of Sixty-third until he came to Troost. He stopped about 2 feet east of the east intersection line of Troost, looked north and saw the Aines truck about 150 to 200 feet away, traveling south astraddle the southbound streetcar track on the west side of Troost. He immediately started across the intersection in low gear, traveling west on a line about 8 or 10 feet south of the north curb line of Sixty-third, and did not veer to either side. When the front wheels of his car were "about directly on the west rail *231 of the southbound track," he saw the Aines truck "about 50 or 60 feet north of the intersection." The truck was still moving towards the intersection, astraddle the southbound track, at a speed of approximately 25 to 30 miles an hour; and plaintiff's car was moving about 8 or 9 miles an hour. Plaintiff then increased his speed in an attempt to get "out of the way," and according to his estimate he was moving about 10 or 11 miles an hour at the time of the collision. Plaintiff testified that the driver of the truck "tried to put on his brakes to stop," but he did not see the truck "slacken its speed"; that "just prior to the time of the impact" the truck swerved to the west 7 or 8 feet (he later said 2 to 3 feet); and that the front end of his Ford sedan was 2½ to 3 feet from the west intersection line of Troost when the front end of the truck struck the right side of the sedan "directly behind the front fender, including part of the fender."
Plaintiff testified on cross-examination that in his "best judgment" the truck was traveling at a speed of 35 to 40 miles an hour when it was "150 to 200 feet north"; and that the truck was "in that position and going approximately that speed" when he entered the intersection.
"Q. And you continued to be aware of his approach and were watching the truck as he came down the street, weren't you? A. I was watching the truck to a certain extent, yes.
"Q. You were actually watching him all the time as he came south on Troost? A. I had my eye on him, naturally."
Plaintiff stated that when his car was five feet from the path of the truck and moving 6 to 8 miles an hour, he shifted from low to second gear; that when he shifted gears the truck was "50 to 60 feet north of the right-hand side of (his) car," and traveling about 30 miles an hour; that he continued to watch the truck as he proceeded across the intersection; that he did not apply his brakes after he entered the intersection; that he was "attempting to accelerate (his) vehicle to get across before the truck got to the point of impact," and "pressed down on the accelerator for that purpose." Plaintiff also testified that under the existing conditions he could have stopped his car in 6 feet when moving 6 miles an hour and in 9 feet when moving 9 miles an hour, plus the distance traveled during reaction time. He offered no evidence as to reaction time.
As stated, defendant Whitaker an employee of the defendant company, was driving the truck at the time of the accident. Another employee of the company was riding with him. Whitaker testified that as he drove south on Troost towards Sixtythird, he was aware of the slow sign on the west side of Troost and "started riding the brake down the hill"; that when the truck was approximately 30 feet north of the intersection he looked east, west, and south and "didn't observe any traffic at all all was clear"; that he did not see plaintiff's Ford sedan approaching from the east until the truck reached a point about "ten feet north of 63d Street curb line"; and that when he first saw the sedan "it was approximately 10 feet into the intersection." At that time Whitaker was driving "around 20 miles per hour" with his foot on the brake pedal and the truck was straddling the southbound streetcar track with the right wheels about 3 feet west of the west rail. He said that when he "saw this Ford for the first time," he "applied the brakes hard" and swerved the truck to the right "about ten feet"; that the rear end of the truck started to skid to the left and he "immediately turned the steering wheel back to the left and released the pressure on the brakes to get out of this shape," and the front end of the truck struck the right side of plaintiff's sedan; and that the truck traveled approximately 30 feet between the time he first saw plaintiff's car and the time of the collision.
Whitaker testified on cross-examination that when he first saw the sedan he realized "it was going to come across the intersection" and "followed its path as it came across the intersection up until the time of the impact.
"Q. Yet you say you started to swerve in what direction? A. To my rightto the west. * * *
*232 "Q. You knew all the time that that Ford car was going to continue to come in front of you and to your right? A. No, sir, I didn't know that.
"Q. Did you think it was going to stop before it got into your path? A. No, sir, I didn't know what it was going to do.
"Q. So you decided to turn to the right? A. Yes, sir.
"Q. As a matter of fact, you swerved some five or ten feet from your course, did you not? A. Yes, sir. I would estimate five to ten feet."
Two employees of the Kansas City Fire Department testified for defendants, but their testimony did not aid plaintiff's case.
As stated, the case was submitted on humanitarian negligence in failing to slacken speed and swerve. The question presented for determination is whether there was substantial evidence on which to base such a charge of negligence. In deciding that question we must, of course, view the evidence in a light most favorable to plaintiff.
Defendants contend, first, that since plaintiff's testimony shows he was "a nonoblivious driver," he did not come into a position of imminent peril until his car was so close to the path of the Aines truck that he could not stop short of that path, citing Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, and similar cases. Plaintiffrespondent contends that he "may not be classified as a `non-oblivious' driver so as to cut down the zone of peril in the manner attempted by appellant"; that his own testimony shows "that although generally aware of the approach of the truck from the north he was oblivious to the danger therefrom until he was within five feet of the path of the truck" and it was impossible for him to stop in that distance. In Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254, and many other cases cited by plaintiff, there was evidence both of obliviousness and reasonable appearances thereof. Plaintiff also cites such cases as Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73; Davis v. Kansas City Public Service Co., 361 Mo. 168, 233 S.W.2d 669; Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000. In each of these cases the plaintiff was aware of the approach or location of the vehicle which later struck him, but under the circumstances of each case was oblivious to his peril. That is not the situation here. It is apparent from the testimony of plaintiff summarized and quoted above that he was aware of the rapid approach of the truck from the time he stopped before entering the intersection until the time of the collision. His testimony shows that as he drove forward he not only knew the truck was moving rapidly toward the intersection, but that he was aware of its approximate distance from the path of his car. He finally said, "I had my eye on him, naturally." He was not oblivious. See Yeaman v. Storms, supra; Smithers v. Barker, 341 Mo. 1017, 111 S.W. 2d 47, 52.
As stated, plaintiff alleged both primary and humanitarian negligence, but the case was submitted to the jury solely on humanitarian negligence. In their answer, defendants had denied the negligence charged and pleaded contributory negligence of plaintiff. Evidently realizing the weakness of his contention concerning his obliviousness, plaintiff argues that defendants' answer alleging contributory negligence in failing "to keep a lookout for vehicles approaching and entering said intersection" is binding on defendants and precludes them from asserting that he was not oblivious to his peril. Plaintiff relies upon Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, and Taylor v. Kelder, 229 Mo.App. 1117, 88 S.W.2d 436. In each of these cases the petition alleged both primary and humanitarian negligence; in each case the answer denied the negligence charged and pleaded contributory negligence; and in each case the cause was submitted solely on humanitarian negligence. In the Bootee case the court said, 183 S.W.2d loc. cit. 895: "There was evidence from which a jury could infer that plaintiff was oblivious to his own peril, if such fact was not fully admitted by defendant's plea of contributory negligence in its answer to plaintiff's charge of primary negligence." The plea of contributory negligence is not set forth in the *233 opinion. In the Taylor case the answer alleged that plaintiff failed to watch where he was walking or to look out for his own safety. After stating that the evidence tended to show that plaintiff was "oblivious of his danger," this court said, 88 S.W.2d loc. cit. 443: "Moreover, the defendant, by his answer, is in no position to make the claim that plaintiff was not oblivious of his danger and could have avoided it. His answer, in effect, alleges that plaintiff was oblivious." See also Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899; Hart v. Chicago, Milwaukee & St. Paul Ry. Co., Mo.App., 265 S.W. 116, 118; Packer v. Chicago, Milwaukee & St. Paul R. Co., Mo.App., 265 S.W. 119, 122.
We think the cases cited by plaintiff are distinguishable on the facts. In those cases and other similar cases which we have read, the plaintiff's testimony showed that he was oblivious to his peril. It is true, as a general rule, that a litigant is conclusively bound by the allegations of fact in his pleadings on which the case is tried; and his opponent is entitled to have the jury instructed to take the admitted facts as positively settled. Hogsett v. Smith, Mo.App., 229 S.W.2d 20, 21. But it is equally true that a party's testimony on the stand may be of such a nature as to preclude him from disputing it. Where a party in full possession of his mental faculties testifies understandingly to a material fact peculiarly within his personal knowledge, such testimony is binding on him unless he subsequently gives some reasonable explanation of the testimony as having been the result of mistake, lapse of memory or misunderstanding. Burris v. Kansas City Public Service Co., Mo.App., 226 S.W. 2d 743, 747. As we have seen, the testimony of the plaintiff herein showed that he was not oblivious to his peril. Having thus testified, he will not be permitted to invoke an admission in defendants' answer wholly inconsistent with his statements under oath. Cf. Callahan v. Huhlman, 339 Mo. 634, 98 S.W.2d 704, 705. See also 31 C.J.S., Evidence, § 381, p. 1172. In ruling this point we have assumed without deciding that defendants' plea of contributory negligence should be construed as an admission that plaintiff was oblivious to his peril at the time in question.
Under the humanitarian doctrine, defendant Whitaker was under no duty to take action to avoid a collision until plaintiff came into a position of imminent peril. Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33, 34; Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 970. The zone of peril of a person driving toward the path of a moving vehicle of which he is aware is narrower than the danger zone of an oblivious person approaching at the same speed, except where inability to control exists and would become apparent at the same distance at which obliviousness might be observed. Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300. When the approaching person is oblivious, the zone of peril "commences and the duty of a driver of a moving motor vehicle begins when he saw, or could have seen by the exercise of the highest degree of care, that the person approaching the path of his vehicle was oblivious to the danger and was intent on continuing across his path." Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 547. It is "the reasonable appearance of an intention to immediately go into the path of an oncoming vehicle without knowing of its approach, and actually not knowing, that places a person in a position of imminent peril from it, while far enough beyond its path to still be able to stop in time to avoid it if he knew it." (Italics ours.) Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13, 19. See also Knight v. Richey, Mo.Sup., 250 S.W.2d 972, 976; Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519. In Turbett v. Thompson, Mo.Sup., 252 S.W.2d 319, 321, it was said: "Of course, a plaintiff may destroy a case of apparent obliviousness by testifying that he was not actually oblivious." When a person approaching the path of a moving vehicle is not oblivious and has the ability to stop, he is not in a position of imminent peril until he is so close to the path of the moving vehicle that he cannot stop short of that path. Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699; Yeaman v. Storms, supra.
*234 Now defendants contend that since plaintiff was aware of the approach of the truck, he failed to make a case for the jury on the issues submitted because there was no evidence from which a jury could reasonably find that defendant Whitaker could have avoided the collision by slackening the speed of the truck and swerving it, after plaintiff's sedan reached a point where he was unable to stop short of the path of the truck.
It will be remembered that as the truck moved toward the intersection it was straddling the west rail of the southbound streetcar track on Troost; and that Troost is 50 feet wide. When we consider the location of the streetcar tracks and the distance between the rails of each track (see third paragraph of opinion), together with the testimony of defendant Whitaker that as he drove south the right wheels of the truck were about 3 feet west of the west rail, it appears that the left (east) side of the truck was 5-5½ feet west of the center of Troost and 30-30 ½ feet from the east curb of Troost until the truck was swerved to the west. It is stated in plaintiff's brief that "the path of the appellants' truck was one in which the left side of the truck was 5-5½ feet from the center of Troost." Plaintiff's estimates of distances and speed, as given at the trial, cannot be reconciled. However, the only testimony he gave concerning the speed of his sedan as it approached the path of the truck was his testimony on crossexamination that it was moving 6 to 8 miles an hour, and that it was moving at the same speed when it was 5 feet from that path. As stated, plaintiff also testified that under the existing conditions he could have stopped the sedan in 6 feet when moving 6 miles an hour, and in 9 feet going 9 miles an hour, plus the distance traveled during reaction time. He said his brakes were in good working condition, but offered no evidence as to reaction time. In view of this testimony it would seem, as the parties assume in their briefs, that going 8 miles an hour he could have stopped in 8 feet after applying the brakes. If the sedan was moving 6 miles an hour as it approached the path of the truck, it was traveling 9 feet a second; and if we give plaintiff the benefit of one-half second reaction time that would add 4½ feet to his braking distance of 6 feet, making the total stopping distance 10½ feet. If the sedan was moving 8 miles an hour, and if we accept the estimated braking distance of 8 feet and add 6 feet (one-half second reaction time), the total stopping distance would be 14 feet. At 6 miles an hour, the sedan would travel 10½ feet in 11/6 seconds; and at 8 miles an hour it would travel 14 feet in 11/6 seconds. Since plaintiff was aware of the approach of the truck, it is doubtful whether he required one-half second reaction time. See Davis v. Kansas City Public Service Co., supra, 233 S.W.2d loc. cit. 675.
In view of plaintiff's varying estimates of distances and speed it is impossible, of course, to determine the exact point where he came into a position of imminent peril. However, under his testimony it seems reasonable to conclude that he was not actually in danger until his sedan was approximately 10½-14 feet from the path of the oncoming truck, for until then he could have escaped injury by stopping the sedan. While the evidence shows that a collision did occur, there is no direct evidence in the record (favorable to plaintiff) as to the distance between defendants' truck and the path of the sedan when plaintiff came into a position of imminent peril. Plaintiff did testify on cross-examination that his sedan was 8 or 10 feet south of "the north curb line of 63d Street" as he drove across the intersection; and that when his sedan was 5 feet from the path of the truck and moving 6 to 8 miles an hour, the truck was 50 or 60 feet north of the right-hand side of his sedan and traveling about 30 miles an hour. It appears, however, that his testimony on cross-examination concerning the position of the truck was at variance with his testimony on direct examination. He stated on direct examination that when the front wheels of his sedan were about on the west rail of the southbound streetcar track, the truck was 50 or 60 feet north of the intersection, traveling at a speed of 25 or 30 miles an hour. If the truck was 50 or 60 feet north *235 of the sedan when the sedan was 5 feet from the path of the truck, then the truck could not have been 50 or 60 feet north of the intersection when the front end of the sedan was about on the west rail of the southbound track and directly in the path of the truck. Plaintiff made no attempt to explain the discrepancy between his testimony on direct examination and that given on cross-examination. In our opinion this confusing and self-contradictory testimony does not constitute "substantial" evidence. The testimony of defendants' witnesses as to distances and speed is wholly inconsistent with plaintiff's theory of the case and for that reason cannot aid him. Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 604.
Even if it were possible to determine from plaintiff's evidence just where the truck was, and the rate of speed at which it was traveling, at the time plaintiff's sedan entered the zone of peril, still no case was made for the jury on the issues submitted because there was no evidence whatever as to the time and distance that would be required to slacken the speed of the truck or change its course, under the existing conditions, so as to avoid the collision. Hunt v. Chicago, Milwaukee, St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738; Young v. St. Louis Public Service Co., Mo.Sup., 250 S.W.2d 689; Elkin v. St. Louis Public Service Co., supra. In our opinion no juror could say, without resorting to speculation and conjecture, that defendant Whitaker could have avoided the collision, after plaintiff was in imminent peril, by slackening the speed of the truck or swerving it to the right or to the left, or by slackening speed and swerving to the right or left. Plaintiff, however, has made certain contentions which we will discuss briefly.
As heretofore stated, the evidence of both parties shows that defendant Whitaker did swerve the truck to the west; and plaintiff testified that the collision occurred when the front end of his sedan was about 2½ feet to 3 feet from the west intersection line of Troost. Whitaker testified that when he applied the brakes and swerved to the west, the rear end of the truck skidded to the left and he "immediately turned back to the left and released the pressure on the brakes to get out of this shape," and the front end of the truck struck the right side of plaintiff's sedan. We agree, of course, with plaintiff's statement that he was not bound by Whitaker's testimony that the truck skidded. We do not agree, however, with plaintiff's contention that Whitaker's testimony that he released the brakes was sufficient to warrant a finding that he could have avoided the collision if he had not released the brakes, for a showing of a mere possibility that the collision might have been avoided is not sufficient to authorize a recovery. Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233, 238. Nor do we agree with his contention that there was substantial evidence showing that only a slight slackening of speed would have allowed the sedan to move forward the necessary distance to clear the path of defendants' truck. The evidence shows that the truck struck the middle of the sedan with such force that the front part of the right rear fender was crushed and both doors on the right side badly damaged. Obviously, this is not an "almost escaping case." See Frandeka v. St. Louis Public Service Co., supra, 234 S.W.2d loc. cit. 548; Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 551. Furthermore, the rule seems to be well settled that even in an "almost escaping case" there can be no recovery unless there is evidence, either direct or circumstantial, to show that in the time and space available, the speed of the defendant's train or car could have been sufficiently slackened to enable the plaintiff to escape injury. Hunt v. Chicago, Milwaukee, St. P. & P. R. Co., supra; Stith v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 693, 698.
Plaintiff's brief contains various contentions and arguments other than those mentioned above. It is impossible, within the limits of this opinion, to discuss all of them. It may be said, however, that some of his arguments are based in part upon assumptions which are not supported by the evidence; and that all of them ignore the *236 speed of the truck and the fact that there was no evidence as to the time that would be required to slacken the speed or change the course of the loaded truck, so as to prevent the collision. We have read the numerous cases cited by plaintiff and find nothing in them inconsistent with our conclusion that the evidence was not sufficient to sustain a verdict in favor of plaintiff.
As stated twice before, the petition charged both primary and humanitarian negligence, but the case was submitted solely on humanitarian negligence. Having determined that plaintiff did not make a case on the issues submitted, we are confronted with defendants' contention that the judgment should be reversed outright because plaintiff was guilty of contributory negligence as a matter of law. While defendants have not assigned as error the overruling of their motion for directed verdict and after-trial motion for judgment, it is the duty of this court to dispose of the case on appeal, if possible, so that litigation may not be unreasonably prolonged.
As we have seen, plaintiff's own testimony shows that the truck was under his observation from the time he started from the stop sign until the time of the collision, and he said he knew Troost was a through street. His car was under control. According to his estimates he could have stopped at any time within 10½-14 feet. He continued on without stopping and without applying his brakes. We believe reasonable minds would agree that the conduct of plaintiff fell below the standard to which he should have conformed to protect himself from injury. Burton v. Moulder, Mo.Sup., 245 S.W.2d 844; Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626; Claridge v. Anzolone, supra; Yeaman v. Storms, supra. We hold, therefore, that he was guilty of contributory negligence as a matter of law.
The judgment should be reversed and the cause remanded with direction to enter judgment for defendants.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the Court. The judgment is reversed and the cause remanded with direction to enter judgment for defendants.
All concur.