**Roy P. PENNINGTON, Appellant,**

v.

**Raymond D. CARPER, Respondent.**

No. 45914.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1958.

Thomas E. Hudson, Morris Dubiner, Robert E. Gregg, Hudson, Cavanaugh & Fox, Kansas City, for appellant.

George T. O'Laughlin, Smithson & Smithson, Spurgeon L. Smithson, Kansas City, for respondent.

BOHLING, Commissioner.

Roy P. Pennington sued Raymond D. Carper for $25,500 personal injuries and property damage arising out of an intersectional automobile collision. Defendant filed answer and counterclaim, asking $300 property damage. The verdict and judgment were for defendant on plaintiff's petition and for plaintiff on defendant's counterclaim.

Plaintiff has appealed and claims error in giving certain of defendant's instructions and in refusing plaintiff's instruction under the humanitarian doctrine. Defendant says no error occurred with respect to the instructions and, in addition, plaintiff was contributorily negligent as a matter of law and failed to make a humanitarian case.

The collision occurred at the intersection of Eighth street and the northbound drive of Paseo boulevard, public streets in Kansas City, Mo., about 4:29 p. m. July 27, 1953. Paseo is a north-south street with two drives, each 40 feet wide, accommodating four lanes of traffic in each direction unless cars be parked in the lane next to the curb, and has a medial strip or parkway, 32 feet wide, separating said drives. Paseo is a through street, is protected against cross-street traffic by stop and slow signs and has no stop or caution signals for northbound traffic at Eighth street, carries traffic for U. S. Highways Nos. 40 and 71, and has an authorized daytime speed limit of 35 m. p. h. Eighth street is an east-west 45-foot street, having two lanes for traffic in each direction, with the curbs at the parkway set back ten feet from the curb line, if extended, of Eighth street, making the distance between the north and south curbs of the parkway 65 feet.

Plaintiff's Exhibit No. 1, a diagram of the intersection, and testimony on behalf of plaintiff established a stop sign for eastbound traffic on Eighth street 30 feet west of the west curb for southbound traffic on Paseo, and a slow sign in the parkway about 11 or 12 feet west of the west curb for northbound traffic on Paseo. Ninth street is 267 feet south of Eighth street.

Plaintiff was eastbound on Eighth street in his 1950 Ford half-ton truck. Defendant was northbound on Paseo in his 1953 Ford convertible. Plaintiff was about 65 years

of age, in good physical condition, had worked in Kansas City for many years, and had crossed over this intersection many times. He was his only eyewitness on the issue of liability, and we follow plaintiff's outline of his testimony. He stopped at the stop sign west of Paseo. When the southbound traffic cleared, he proceeded to cross Paseo in the north eastbound lane of Eighth street. When the front end of his truck was "about middleways" of the parkway, traveling 10 to 12 m. p. h., he looked to the south, saw a car in the west lane of the northbound drive of Paseo just a little south of the parkway curb coming to a stop and stopping 7 to 10 feet south of plaintiff's line of travel, and a second car about 75 or 100 feet "south of Eighth street" in the second lane from the west, traveling 25 to 30 m. p. h. "I proceeded to go through the intersection. It was all clear. I was looking east." When the front end of his truck was half way across the third lane from the west, still traveling 10 to 12 m. p. h., he first again looked to the south and defendant's Ford "was right on me then" and "there was nothing I could do, just hold on, that's all." The front end of defendant's Ford struck plaintiff's truck about the middle of its side, a photograph shows about the center of the door of the truck's cab. Plaintiff estimated defendant's speed at 25 to 30 m. p. h. at the time of impact, said he saw no sign of defendant swerving, and heard no warning. Plaintiff said he did not have his brakes on at the time of the collision, and guessed the impact stopped his car, headed east. He said defendant's Ford bounced back a few feet.

The testimony on behalf of defendant was to the following effect: Mr. and Mrs. William A. Skinner, Mr. Skinner driving, were northbound in their 1951 DeSoto sedan on the west lane of the northbound drive of Paseo, traveling 25 to 30 m. p. h., and intending to proceed north to Sixth street. There was an automobile (defendant's) in the lane to their right about two car lengths back. Defendant testified he was traveling north about 25 m. p. h., intending to go to Kansas, in the lane immediately east of the Skinner automobile, it being a little ahead of his car. He judged the front end of his car was about even with the middle of the Skinner car. Mr. Skinner saw plaintiff's truck about the time it entered the southbound drive of Paseo and watched it as it proceeded eastwardly, observed that plaintiff as he drove into the northbound drive was looking straight ahead to the east and picked up speed, not over 30 m. p. h., to beat the DeSoto across the intersection. Mr. Skinner did not slacken speed of his DeSoto until he saw, if he did not, he would hit plaintiff's truck, and he put on his brakes with all the force he had, stopped three to five feet short of striking plaintiff's truck, then heard a squeal of brakes and in "hardly a second" the collision occurred. Defendant testified he could see between the two parkways "back down there" while approaching Eighth street but plaintiff's truck was not there then. The Skinners testified the door windows of their sedan were down. Defendant testified the Skinner car obstructed the view to his left, the west. He noticed the Skinner car making an abrupt stop and started applying his brakes. He saw plaintiff's truck for the first time when his line of vision cleared the Skinner car. Plaintiff was then just about at the west curb line of the northbound drive and defendant's car was just south of the curb line of the parkway. Defendant continued to apply his brakes, swerved to his right, and was traveling about 10 m. p. h. at the instant of impact, which occurred a little past the middle of the lane to his right; that is, the third lane from the west.

We quote ordinance provisions, omitting catchwords, of Kansas City relating to the operation of vehicles on its streets offered in evidence by plaintiff:

"Section 31–22.1. * * * 'The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When two

vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield to the driver on the right.'

"Section 31–22.2. * * * 'The driver of any vehicle who has stopped as required by law at the entrance to a through street shall yield to other vehicles within the intersection or approaching so closely on the through street as to constitute an immediate hazard but said driver having so yielded may proceed and other vehicles approaching the intersection on the through street shall yield to the vehicles so proceeding into or across the through street.' "

Defendant read in evidence the following:

" 'Section 31–18. * * * Operators of all vehicles and street cars except authorized emergency vehicles are required to observe the instructions of all official traffic signs placed under the provisions of this chapter. Such signs shall include all lettered signs, all buttons, all curbing, all mechanical traffic signals, and all paint marks placed upon the surface of the roadway. Such signs shall be held to have the same authority as the personal direction of a police officer.' "

" 'Section 31–31. * * * Upon the following streets or boulevards, which shall be posted at intervals designating the maximum speed to be 35 miles per hour, daytime only, the speed shall not exceed said rate.' Now, listed among other streets is The Paseo, from Admiral Boulevard to 79th Street."

 We have said the area of an intersection embraces the paved or traveled space common to both highways. Brumback v. Simpson, Mo., 247 S.W.2d 635, 637 [2]; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 579 [1]. The traveled portion of Eighth street between the parkways for east-west traffic was not common to the northbound drive of Paseo, and said drive constituted an intersecting highway with Eighth street. McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, 141 [15]. It would destroy the purpose and usefulness of a through street with a 32-foot center parkway, separating 40-foot driveways for traffic in opposite directions thereover, to hold that an automobile on a servient intersecting street has the right of way upon entering its near driveway of a through street to proceed across the parkway and the far driveway and require automobiles on the far driveway to yield the right of way from the time such automobile on the servient street entered its near driveway of the dominant street.

 We do not agree with plaintiff that the northbound drive of Paseo was "all clear." While approaching, entering upon and proceeding across an intersection, plaintiffs are not relieved of the primary duty of maintaining a proper lookout and to have their automobiles under such control as to avoid a collision with other vehicles approaching the intersection from which danger of collision exists. Defendant was approaching the intersection on plaintiff's right, and was on a through street with an authorized speed limit of 35 m. p. h. Notwithstanding the warning of the "slow" sign in the parkway, which had the effect of "the personal direction of a police officer" under § 31–18, quoted supra, of the ordinance, plaintiff, under his own testimony, traveled a distance of 41 feet at 10 to 12 m. p. h. before again looking to observe the approach of defendant's automobile, which he had seen 75 to 100 feet south of Eighth street traveling 25 to 30 m. p. h. and moving in the direction from which a collision was to be anticipated; and when plaintiff next looked defendant's automobile "was right on me then" and plaintiff could do nothing to prevent the collision. In the circumstances of record reasonable minds should agree that plaintiff's negligence in failing to look to the south until it was too late directly contributed to the collision. Burton v. Moulder, Mo., 245 S.W.2d 844, 846 [2, 3, 6–

8] ; Branscum v. Glaser, Mo., 234 S.W.2d 626, 627; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 499 [6] ; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 582 [10, 11], second appeal, Mo., 305 S.W.2d 423, 427 [3] ; James v. Berry, Mo.App., 301 S.W.2d 530, 533 [5–8]; Major v. Davenport, Mo. App., 306 S.W.2d 626, 630; Parkville Milling Co. v. Massman, Mo.App., 83 S.W. 2d 128, 131 [6, 8, 9]. Not having made a submissible case on primary negligence, plaintiff is in no position to complain of error in defendant's instructions submitting defenses thereto. Graves v. Atchison, T. & S. F. R. Co., 360 Mo. 167, 227 S.W.2d 660 [3], among others.

Plantiff claims error in the refusing of his humanitarian instruction, which, predicated a recovery in the conjunctive on defendant's failure to stop, and to slacken speed, and to swerve under the humanitarian doctrine.

■ Among the constitutive requirements of a plaintiff's humanitarian case in proper instances is the fact that the defendant could have averted the impending injury with safety to himself and others. The doctrine does not require a defendant to save a plaintiff at the expense of himself or others. Banks v. Morris & Co.; 302 Mo. 254, 257 S.W. 482, 484 [2]. Plaintiff's submission in this respect conditioned a recovery only on defendant's ability to have averted injuring plaintiff "with safety to the defendant's automobile and said defendant." The testimony of Mr. and Mrs. Skinner and of defendant established that the Skinner automobile was a little ahead of and in the lane immediately to the left of defendant. There was grave danger of damage to the Skinner automobile and of injury to its occupants had defendant swerved to his left. The instruction ignores this essential element of the humanitarian doctrine and was properly refused by the court. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 11 [2, 11]; Martin v. Lingle Refrigeration Co., Mo., 260 S.W.2d 562, 567 [6].

■ An instruction should be supported by evidence. Biehle v. Frazier, 360 Mo. 1068, 232 S.W.2d 465, 467 [1]. "Trial courts may not be convicted of error in refusing to give an instruction which is not substantially correct in both form and substance, although the giving of such instruction would not be reversible error." McCarthy v. Sheridan, 336 Mo. 1201, 83 S.W. 2d 907, 911. See also Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 996 [5–10], 125 A.L.R. 674; Caine v. Physicians' Indemnity Co., Mo.App., 45 S.W.2d 904, 909 [11]; Britain v. Davis, Mo.App., 198 S.W.2d 354, 357 [4].

Plaintiff's timing was bad but that does not establish obliviousness of the approach or of the danger of a collision with an approaching automobile he had observed; and in the circumstances of record, plaintiff placing all responsibility of avoiding contact upon defendant, the imminent peril zone was narrow and did not commence until plaintiff was so close to the path of defendant's automobile that it should have been reasonably apparent, at the speed and manner in which plaintiff was moving, that he would not stop before reaching it. There is no showing of defendant suddenly increasing his speed. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 52 [5–7]. For other cases on obliviousness: Hilton v. Terminal R. Ass'n, 345 Mo. 987, 137 S.W.2d 520, 522 [5]; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899, 900; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778 [9]. The instant case is distinguishable from Perry v. Dever, Mo., 303 S.W.2d 1, in that, among other things, it does not involve a pedestrian walking onto and taking a position on a highway in the path of an oncoming automobile in circumstances warranting an inference of obliviousness for a sufficient time to permit of action under the humanitarian rule by the oncoming motorist.

■ Plaintiff's evidence as well as defendant's established that defendant did swerve some to the right. Giving consider-

ation to the facts of record, among others, that defendant was on a through street protected against cross-street traffic and traveling two to three times as fast as plaintiff, a fatal weakness of plaintiff's humanitarian submission is that, in addition to there being no evidence that plaintiff was unable to timely stop his truck, there was no evidence of the stopping distance of defendant, or defendant's ability to effectively slacken his speed, or more effectively swerve his automobile. "We cannot take judicial notice of the exact distance within which a certain automobile may be stopped under given conditions." Mallow v. Tucker, Mo., 281 S.W.2d 848, 851 [4]. Reaction time is also involved. Defendant's view of plaintiff was obstructed to some extent by the Skinner automobile and its occupants, and that defendant should have discovered plaintiff's intent to cross ahead of defendant in time to have averted the collision by stopping and slackening speed and swerving was not removed from speculation. Plaintiff's instruction would have authorized the jury to make some findings of fact without evidence of the facts submitted. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 498 [2–5]; Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S.W. 2d 51, 52 [1,2]; Rhees v. Koehler, Mo. App., 241 S.W.2d 812, 814 [2]; Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 603 [7]; Ashbrook v. Willis, 231 Mo.App. 460, 100 S.W.2d 943, 945 [5]; Breshears v. Myers, Mo., 266 S.W.2d 638, 640 [2]; Young v. St. Louis Public Service Co., Mo., 250 S.W.2d 689, 691 [2].

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.